## ASSOCIATED EMPLOYERS LLOYDS v. GIBSON.

### No. 2905.

Court of Civil Appeals of Texas. Eastland.

Dec. 14, 1951.

Rehearing Denied Jan. 18, 1952.

James Little, Big Spring, for appellant.

Bob Huff, John H. Splawn, Jr., Lamesa, for appellee.

LONG, Justice.

Appellee A. E. Gibson recovered a judgment based upon special issues in a Workmen's Compensation case against appellant, Associated Employers Lloyds, for 104 weeks of temporary total incapacity at the rate of $25 per week dating from September 27, 1947 and for 297 weeks of fifty percent permanent partial incapacity following the expiration of the temporary total incapacity at the rate of $21 per week. From this judgment the insurance company has appealed.

It is undisputed that appellee received a serious personal injury at the plant of the Lamesa Cotton Oil Company, the employer involved in this suit. Appellant contends that there is no evidence of probative force or in the alternative, insufficient evidence of probative force showing that appellee was an employee of Lamesa Cotton Oil Company at the time he sustained such injury. The jury found that appellee, at that time, was an employee of Lamesa Cotton Oil Company and acting in the course of his employment. In passing upon the question presented, it is our duty to view the evidence in its most favorable light in support of the verdict. It is undisputed that at the time appellee was injured he was regularly employed by Lamesa Machine Shop. Appellee testified that he went to the premises of Lamesa Cotton Oil Company at about eight o'clock in the evening of September 27, 1947 for the purpose of obtaining, if he could, part-time work; that he went to the office and there

was no one there and he then went to the main building, to the cake room and to the superintendent's office; that there was no one at either of these places; that he then went south to the lint room; that after going to the lint room he came back to the office and there he saw Mr. Brandon, superintendent of the mill; that Mr. Brandon said he was sick and got in his car and left; that he then saw Mr. McDaniel, an employee of the mill, who lived next door to him, and that he asked Mr. McDaniel where Mr. Walser, the night superintendent of the mill, was; that Mr. McDaniel answered that he did not know; that he was out right then. He further testified that he talked to McDaniel for two or three minutes and that McDaniel told him they were having some trouble with the motor and that he, appellee, said: "Yes, I believe I smell burning belt slipping." He further testified that Albert Cherry, the assistant night superintendent of the mill, walked up and talked with Mr. McDaniel and that they talked about the motor slipping; that at that time he, appellee, said to Cherry, "I could fix that if you want me to," and that Cherry replied, "O. K." He testified that he, Cherry and a Mexican went down into the cellar where the motor was located and loosened some bolts. He testified in detail as to the work that was done there by the parties; that the time consumed in doing the work was about an hour and a half. After the work was completed, appellee testified that when he got back on top he thought the chain was a little tight. He testified that the parties stood on the ground by the side of the seed room a few minutes and while standing there with these employees, he stated to them that he was going home, that his wife would be home from the picture show and that at that time Mr. McDaniel went into the seed tank and the Mexican and Cherry left. The machinery at that time was in operation and was continuously in operation thereafter until the accident occurred. After Cherry and the Mexican had gone from the scene and after McDaniel had been in the seed tank for several minutes, appellee entered the seed tank. Appellee testified that he did not go into the tank to do any work, but went in there to tell Mr. McDaniel that the sprocket chain was tight and to tell him he was going home. Appellee took two or three steps into the seed house and stepped into the seed conveyor whereby one of his legs was completely crushed.

Under Article 8309, Section 1 of the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8309, § 1, the term employee is defined in part as follows: "'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written".

■■ The evidence is sufficient to show that appellee performed services for the Lamesa Cotton Oil Company on the occasion but we are of the opinion that it is insufficient to show that such services were performed under a contract of hire either expressed or implied. It was incumbent upon appellee to establish that the services so performed were under a contract of hire either expressed or implied. It is our opinion that remuneration is a necessary element in a contract of hire under the Workmen's Compensation Act. State v. Kenyon, Inc., Tex.Civ.App., 153 S.W.2d 195 (Writ Ref.); 67 C.J. 276. We have searched the record and are unable to find sufficient evidence to show that there was a contract of hire between the parties. Appellee testified that there was no money involved and that he was doing the work as a favor and that he expected a favor in return. The circumstances are not such that Lamesa Cotton Oil Company should have been reasonably expected to pay him any wages for his services. It is undisputed that no one asked appellee to assist in making the repairs. The evidence shows there were twenty-five or thirty employees of the Lamesa Cotton Oil Mill available at the time. Only four people, including appellee, assisted in making the repairs. The only conversation that occurred between Cherry, the assistant night superintendent, and appellee in connection with his alleged employment, is as follows: Appellee testified he said, "Cherry, I can fix that if you want me to," and that Cherry replied, "O. K." Appellee never at any time told Cherry

or any one connected with the oil mill that he was seeking part-time employment.

 From the testimony of appellee, it is clear to our minds that he was not expecting any compensation for the services rendered on that occasion. That the only hope of reward he had was that the superintendent of the mill might give him a part-time job. We have made diligent search of the authorities, both in this state and in other jurisdictions and have concluded that the case of Nobles v. Texas Indemnity Ins. Co., Tex.Com.App., 24 S.W. 2d 367 is controlling. In that case it was held a workman who volunteered to drive a truck for a regular driver for the sole purpose of getting the regular truck driver as a hunting companion and without promise of remuneration, either expressed or implied, was a mere volunteer and not an employee within the meaning of the Compensation Act, Article 8309, Vernon's Annotated Revised Civil Statutes. In the instant case, we believe that Gibson was a volunteer and not an employee. Even after the work had been completed he made no mention of any pay. He told the parties that he was going home because his wife would be home from the picture show. All the facts and circumstances, when taken together, do not show a contract of hire either expressed or implied. We have concluded the evidence is insufficient to support the finding of the jury that appellee was an employee of Lamesa Cotton Oil Company and it, therefore, becomes our duty to reverse and remand the cause to the trial court.

On Motion for Rehearing.

Appellant, in its motion for rehearing, insists that the judgment in this case should be rendered in its favor. Under the authority of Childre v. Casstevens, 148 Tex. 297, 224 S.W.2d 461 and Miller v. Fleming, Tex.Sup., 233 S.W.2d 571, this motion is overruled.

We have again considered the record in this case and believe that we made a proper disposition thereof in our original opinion and appellee's motion for rehearing is also overruled.