288 P.2d 691

**AKTIENGESELLSCHAFT DER HARLAN-DER BUAMWOLLSPINNERIE UND ZWIRN–FABRIK, Plaintiffs-Appellees,**

**v.**

**LAWRENCE WALKER COTTON COM-PANY, Inc., a Corporation, Defendant-Appellant.**

**No. 5933.**

Supreme Court of New Mexico.

Oct. 4, 1955.

Garland & Sanders, Las Cruces, for appellant.

Edwin Mechem, Edward E. Triviz, Las Cruces, for appellees.

LUJAN, Justice.

This is an appeal from a summary judgment entered in favor of plaintiff and defendant appeals.

The record discloses that on May 12, 1949, defendant entered into a written contract with the plaintiff, by the terms of which it was agreed that defendant would ship to plaintiff at Trieste, Italy (Free Territory), 440 bales of good middling cotton, with reimbursement by sight draft on New York bank under E.C.A. terms, and weight settlement on Edward T. Robertson's (controller for the defendant), sworn landed weights.

By its answer the defendant admitted the allegations of paragraphs one, two and three of plaintiff's complaint to the effect that:

"1. That defendant, Lawrence Walker Cotton Company, Inc., is a domestic corporation organized under'

the laws of the State of New Mexico, engaged in buying and selling cotton with its principal place of business being Las Cruces, Dona Ana County, New Mexico.

"2. That defendant and plaintiff herein, an Austrian firm, entered on May 12, 1949, into a written contract of sale, designated as A–4, a copy of which is attached hereto marked Plaintiff's Exhibit A and made a part hereof, by the terms of which it was agreed that the defendant would ship to the plaintiff to Trieste 440 bales of good middling cotton, with reimbursement being sight draft on N. Y. Bank under E. C. A. terms, and 'weight settlement on Edward T. Robertson's (controller for the defendant herein) sworn landed weights.'

"3. Pursuant to and in connection with such contract, the defendant, as apparent from its Invoice No. A–4, dated June 14, 1949, a copy of which is attached hereto, marked Plaintiff's Exhibit B and made a part hereof, received for the credit of the plaintiff the sum of $94,504.60 from the Bank of the Manhattan Company, New York, for the net invoice weight of 218,054 pounds of cotton, at 43.34¢ a pound; and as also apparent from such Invoice No. A–4, 'Final settlement on Trieste landed weights super-

vised by Edward T. Robertson & Son,' designated on said Invoice of the defendant as 'Our Controller.'"

The defendant denied the allegations of paragraphs four and five which declare that:

"4. Pursuant to such contract so providing for weight settlement on the said Edward T. Robertson's sworn landed weights, the defendant's shipment was weighed at Trieste, and, as apparent from the said controller's 'Sworn Total Landing Report,' a copy of which is attached hereto marked Plaintiff's Exhibit C and made a part hereof, the difference between the net landed weight, on basis of which settlement was agreed to be made, of 215190 pounds and the net invoice weight of 218054, for which the defendant had already received the said sum of $94,504.60, represents a loss of 2864 pounds, which at the agreed price of 43.34¢ a pound amounts to $1,241.26, which, contrary to the terms of the contract, defendant has detained and refused to refund plaintiff despite the fact that, as apparent from letter dated 15th October 1941 (a copy of which is attached hereto marked Plaintiff's Exhibit D and made a part hereof) from its controller, Edward T. Robertson & Son, to Office of Controller, ECA Mission c/o American Embassy, Vienna, Austria, the orig-

inal Sworn Total Landing Report of defendant's controller was sent to the defendant on August 31, 1949, on the basis of which settlement was to be made according to the said contract of sale.

"5. Despite repeated demands therefor, the defendant has neglected, failed and refused to settle plaintiff's claim for the said sum of $1,241.26, so representing the loss of 2864 pounds between the net landed weight, as agreed to be settled by defendant's controller, and the net invoice weight, for which the defendant herein acknowledged payment by its invoice No. A–4."

Plaintiff's Exhibit D referred to in paragraph 4 of his complaint reads as follows:

"We, are given to understand from receivers for the buyers that this latter has not yet been able to get settlement relating to the loss in weight, ascertained on the above shipment at the port of discharge, apparently owing to the non-receipt by somebody of our Sworn Total Landing Report showing a loss in weight of Lbs. 2864.

"As you know, as per standing regulations, we, as shippers' controllers, have to send the original of said report to shippers and copy of ECA Mission concerned. This has been done on August 31, 1949, but for or-

der's sake, we are today sending shippers another copy of the Total landing Report in question and, herewith, attach another copy for your files.

"We remain, dear Sirs,

"Very truly yours,
(sgd.) Edward T. Robertson & Son
By ————
unleserliche Fertigung".

By way of new matter the defendant alleged:

"1. That it complied fully with the contract between it and the plaintiff dated May 12, 1949.

"2. That if any loss in weight of said cotton occurred it was by reason of the loss of 22 bales of cotton in transit, the weight of same being unknown; that there was no authority in said contract between plaintiff and defendant dated May 12, 1949, to use the average weight of bales of cotton shipped to make up any loss which may have occurred; and there was no authority in said contract to substitute other cotton for cotton which may have been lost in transit, the weight of bales of which are unknown.

"3. That to permit the substitution of other bales of cotton for that lost in transit without knowing the weight, staple and grade of same is too vague and indefinite to charge defendant

with the loss of weight of bales of cotton for which other bales of cotton was substituted, weight of which is unknown; all of which would be a mere matter of speculation and would be insufficient in law upon which to base a judgment."

Defendant did not allege or plead as a defense that the determination of *its controller* was fraudulent, made in bad faith, or in such gross mistake or gross negligence as to imply bad faith or failure to exercise honest judgment.

On March 23, 1954, notice was given defendant of plaintiff's motion for production of Edward T. Robertson & Son sworn landing report. On March 24, 1954, defendant replied "that said landing report or a copy thereof is not in its possession, custody or control, and has not been since this action was filed and long prior thereto; hence, defendant cannot produce said landing report or a copy thereof."

On March 25, 1954, on motion of plaintiff, the court ordered defendant to take the necessary steps to produce before the court by April 19, 1954, or such other place as may be agreed upon by the parties, the original or copy of Edward T. Robertson & Son (defendant's controller), sworn total landing report.

On January 24, 1954, the day of the trial this report had not been produced:

"The Court: What efforts have you made to comply with the Court's previous Order to produce this before the Court?

"Mr. Garland: We haven't made any. We don't have it—we don't have a copy of it.

"The Court: That is the only thing: when the Court issues an Order it expects some sort of an effort be made to comply with that order.

"Mr. Garland: Well, personally, we haven't made any showing because we don't have it, and we haven't had it since 1952. Mr. Walker said he asked the Shippers to return that, but it wasn't done."

At this stage of the trial the plaintiff renewed its motion for summary judgment and for judgment by default, pointing out that according to the contract of the parties, the defendants' controller, Edward T. Robertson, was made the arbiter and in the absence of any defense and pleading by defendant that such arbiter acted fraudulently, or through gross error, negligence, there was no genuine issue of fact, and for the further reason that plaintiff was entitled to judgment by default for failure of defendant to comply with the court's order for the production of said landing report.

In this connection the court observed that due to the poor showing on the part

of the defendant, he would have to admit the landing report, and further that the contract could not allow speculation as to the method of determination in that the contract shows the weights settlement were to be made by Edward T. Robertson's landed report and the contract itself gave Robertson that authority.

The court found:

"2. The defendant and plaintiff entered on May 12, 1949, into a written contract of sale, designated as A–4, a copy of which is attached to plaintiff's complaint marked Exhibit A and made a part thereof, by the terms of which it was agreed that defendant would ship to plaintiff to Trieste 440 bales of good middling cotton, with reimbursement being sight draft on N.Y. Bank under E.C.A. terms, and 'weight settlement on Edward T. Robertson's (controller for the defendant) sworn landed weights.'

"3. Pursuant to and in connection with such contract, the defendant, as apparent from its Invoice No. A–4, dated June 14, 1949, a copy of which is also attached to plaintiff's complaint marked Exhibit B and made a part thereof received for the credit of the plaintiff the sum of $94,504.60, from the Bank of the Manhattan Company, New York, for the net invoice weight of 218,054 pounds of cotton at 43.34¢

a pound; and as also apparent from such Invoice No. A–4, 'Final settlement on Trieste landed weights supervised by Edward T. Robertson & Son,' designated on said Invoice of the defendant as "Our Controller."

"4. (a) The defendant in answer to plaintiff's request for admission of fact pertaining to Edward T. Robertson & Son sworn total landing report, stated that 'further answering, defendant states that an instrument purporting to be a copy of said Edward T. Robertson & Son sworn total landing report was received, * * *.' The fact is, however, that the defendant cannot deny that they did not receive a copy of such report from Edward T. Robertson & Son because the same is a matter of which the defendant has personal or presumptive knowledge; and

"(b) Further, by order of this Court dated March 25, 1954, the defendant was directed to take all necessary steps to obtain such landing report for production, and the defendant has wholly failed and neglected to comply with said order of this Court, and, as set forth in plaintiff's motion for summary judgment dated July 2, 1954, no good cause has been shown by the defendant for such non-compliance, and in connection with such mo-

tion the plaintiff further submitted the controller's report, marked Exhibit A signed by George Edward O'Neil, General Agent and Attorney for the said defendant's controller.

"(c) As apparent from such landing report of defendant's controller, a copy of which is attached to plaintiff's complaint, marked Exhibit C, with the notation at Trieste dated August 31, 1949, Edward T. Robertson & Son, the defendant's controller, according to whose weight determination final settlement was to be made, determined a weight loss of 2864 pounds;

"5. Such weight loss and shortage of 2864 pounds at the agreed price of 43.34¢ a pound amounts to $1,241.26, to the reimbursement of which plaintiff is entitled;

"6. The defendant in its answer did not attack or impeach the determination of its own controller as having been made in fraud, bad faith, gross mistake, or gross negligence, and in the absence of any such attack and proof, the determination of the controller herein is binding on the parties;

"7. There is no genuine issue as to any material fact to by submitted either to the trial court or to a jury, and having concluded that the plaintiff is entitled to judgment as a matter of law, it is * * *."

Defendant (appellant) seeks reversal of the judgment on the following grounds: (1) That, since there were genuine and material issues of fact in the case as disclosed by the pleadings, the court erred in sustaining plaintiff's motion for summary judgment and entering a summary judgment therein; and (2) that, if title passed to the buyer when the cotton was loaded aboardship and the bill of lading issued, the court erred in granting judgment for plaintiff.

We are unable to agree with counsel as to his first proposition. According to the contract the parties agreed to have a final settlement by defendant's own controller at Trieste. This was admitted by defendant's answer and, in the absence of a legally sufficient defense to attack and impeach the determination and method of its controller, the parties are bound by such determination. The statement of facts, as borne out by the record, and the pleadings themselves show that the contract provided for settlement at Trieste according to the determination of defendant's own controller, Edward T. Robertson & Son, and that payment to defendant by plaintiff on the basis of 218,054 pounds of cotton was made. The only material allegation that is denied by defendant is that according to the landing report reflecting the determination of its own controller, being Exhibit C, there was a shortage of 2,864 pounds of cotton, amounting

to $1,241.26, to the reimbursement, with interest, of which the plaintiff is entitled.

The plaintiff requested the defendant, pursuant to Rule 36 of District Court Rules of Civil Procedure, for an admission of the truth, for the purpose of this action, of the following facts:

(1) Is it not a fact that Exhibit C attached to plaintiff's complaint is a true and correct copy of the report of defendant's controller, that is, Edward T. Robertson & Son, Sworn Total Landing Report; and (2) is it not also a fact that the original or a copy of Edward T. Robertson's Sworn Total Landing Report was received by the defendant? In answering this question, please set forth in entirety the contents of such report or attach a copy of such report to defendant's answer.

In response thereto the defendant neither admitted nor expressly denied the same, but stated:

(1) That defendant *cannot* with truth *admit* that Exhibit C attached to plaintiff's complaint is a true and correct copy of the report of defendant's controller, that is Edward T. Robertson & Son sworn total landing report *is true*, for the reason that defendant has never had it in his possession or seen what purported to be the original thereof. Therefore, defendant *cannot admit* that plaintiff's Exhibit C is a true and correct copy of the same; and (2) that defendant states that the original of said report was never received by him. Further answering, defendant states that an instrument purporting to be a copy of said Edward T. Robertson & Son sworn total landing report was received by him but that he does not now have the same in his possession and he does not admit that same was a true copy of the original of said Edward T. Robertson & Son sworn total landing report. Defendant cannot set forth in entirety or in part the contents of such report or attach a copy of the same to its answer for the reason that defendant many months prior to the commencement of this action sent what purported to be a copy of the same to the American Shippers Association and had never received the same back.

Does the language employed by defendant in response to plaintiff's request for admission of facts put at issue, (1) the material fact that Exhibit C is, or is not, a true and correct sworn total landing report of Edward T. Robertson & Son, defendant's own controller; and (2) whether or not the original or a copy of such landing report was received by defendant, and if so, does it set out in entirety the contents of such report? Our answer is, it does not.

The first question is answered by our holding in Bank of New Mexico v. Pinion, 57 N.M. 428, 259 P.2d 791, wherein

Justice Sadler, speaking for the ·Court, held that an averment to the effect that· "defendants neither admit nor deny the remaining allegations of the complaint but demand the strictest proof thereof, fails to put at issue any material fact alleged in the complaint." We reaffirm said pronouncement.

 As to the second question it is to be noted that defendant acknowledged having received what purported to be a copy of said report, which was sent by him to the American Shippers Association, and which he failed to make any effort whatever to have returned to him in order to comply with the court's order directing its. production for inspection by· the plaintiff. He had personal or presumptive knowledge of its contents and could have complied with plaintiff's request had he ·desired so to do. In Taylor v. Newton, 117 Cal.App.2d 752, 257 P.2d 68, 73, the ·court said, and we quote with approval, that:

> "It is well settled that a matter of which defendant has personal knowledge, or a matter which is presumptively within his knowledge, cannot be denied on information or belief, but must be answered positively or such denial may be disregarded as an evasion."

In Moore's Federal Practice, Vol. 6, Section 56.04, page 2028, it is said:

"The summary judgment procedure prescribed in Rule 56 is a procedural device for promptly disposing of actions in which there is no genuine issue as to any material fact. In many cases there is no genuine issue of fact, *although such an issue is raised by the formal pleadings*. The purpose of Rule 56 is to eliminate a trial in such cases, since a trial is unnecessary and ·results in delay and expense which may operate to defeat in whole or in part the recovery of a just claim or the expeditious termination of an action because of a meritorious defense that is factually indisputable. 'The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, ·so that only the latter may subject a suitor to the burden of a trial.'" (Emphasis ours.)

And on .page 2094 of the same volume it is said:

"Where, then, it is clear that there is no dispute as to the facts, which would justify judgment for one of the parties, the court may properly sustain his motion, including an oral motion made at the hearing; and, even in the absence of a formal motion, may grant summary judgment to a. party when it is clear what the facts are and his

adversary has had a fair opportunity to dispute them. * * *."

We recognized this rule as a method for determining the existence of genuine factual issues warranting submission of the case to a jury in Agnew v. Libby, 53 N.M. 56, 201 P.2d 775.

The contract in question was for 440 bales of cotton at a fixed price of 43.34¢ per pound. The total contract price could not be ascertained at the time the contract was entered into, as by its terms, the weight was to be determined on the basis of Edward T. Robertson & Son sworn landing weights report. Defendant's invoice indicated a net weight of 218,054 pounds. On that basis the defendant himself calculated and admits receiving the total price of $94,504.60, and the invoice also by its terms contemplated settlement on Trieste landing weights supervised by Edward T. Robertson & Son. Robertson's weight report shows a weight shortage of 2864 pounds of cotton. Said contract was for no specific number of pounds of cotton but for such number of pounds as might be determined by Edward T. Robertson & Son at Trieste.

In the case of Felt, for Use of United States v. Ronson Art Metal Works, D.C., 107 F.Supp. 84, 85, the court pointed out that the rule to be followed is that which is succinctly stated in Vol. 3, Barron and Holtzoff, Federal Practice and Procedure, at page 88, as follows:

" 'The rationale of these cases seems to be that the moving party has the burden of showing that there is no genuine issue as to a material fact and that he is entitled to judgment as a matter of law, but that when he has made a prima facie showing to this effect *the opposing party cannot defeat a motion for summary judgment* and require a trial *by a bare contention that an issue of fact exists.* He must show that evidence is available which would justify a trial of the issue.' " (Emphasis supplied.)

When on the basis of established facts, the plaintiff is entitled to summary judgment as a matter of law, the defendant contending and arguing that there is a genuine issue of material fact cannot and will not make it so. The following language is used in Morgan v. Sylvester, D.C., 125 F.Supp. 380, 390:

" * * * Of course, every denial in a pleading raises a formal issue— but it does not necessarily raise a genuine issue of fact. '(F)ormalism is not a substitute for the necessity of a real or genuine issue.' Rule 56 is intended precisely to permit 'a party to pierce the allegations of fact in the pleadings * * * where facts

set forth in detail in affidavits, depositions, admissions on file, and other competent extraneous materials show that there are no genuine issues of fact to be tried.'

"If a mere denial in a pleading, repeated in an affidavit unsupported by any proof, were sufficient to require the credibility of the opposing party to be determined upon a trial, it would make a shambles of Rule 56."

See, also, Goldberger v. McPeak, D.C., 60 F.Supp. 498; Burger v. Social Security Board, D.C., 66 F.Supp. 619, affirmed Miller v. Burger, 9 Cir., 161 F.2d 992.

■ Under the terms of the contract the defendant's controller, Edward T. Robertson & Son, was made the arbiter and in the absence of any defense and pleading by the defendant that such arbiter acted fraudulently or through gross error, or negligently, there was no genuine issue of fact, and his determination was conclusive and binding on the parties.

In Odell v. Colmor Irrigation & Land Co., 34 N.M. 277, 280 P. 398, 400, we said:

"From an examination of this contract, we must presume that the parties realized at the time they entered into it that such disputes would arise between them, and that the engineer might err in his determination of such matters; that in order to provide a forum within which such disputes might be speedily determined, they agreed upon such engineer as their umpire. Neither party reserved the right to revise his determination of such questions for mere errors or mistakes on his part, but, rather, they chose to make such decision final and binding upon them. Under such circumstances, mere errors or mistakes on the part of such engineer with regard to the kind, class, or quantities of materials excavated by the contractor are insufficient to warrant a court of equity in vacating and setting aside his decision. There must be fraud, or such gross mistakes which necessarily imply bad faith, or the failure on the part of such engineer to exercise an honest judgment with regard to such matters. The mistakes must be so gross as to clearly indicate that such engineer has acted consciously unjust in the discharge of the duties imposed upon him, and has thereby violated the rights of the complaining party. [Citing cases.] * * *"

In 17 C.J.S., Contracts, § 498, p. 1024, it is said:

"Where the contract expressly so provides, or in plain language shows that it was the intention of the parties that the person to whom the question is submitted should be the final arbiter

thereof the decision, certificate, or estimate is conclusive and binding on the parties in the absence of fraud, bad faith, or mistake, * * *."

And at pages 683, 685 of the same volume, § 294, the text states:

"A court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language, but will enforce or give effect to the contract according to its terms, in the absence of fraud or other grounds affecting enforcement according to its terms."

In the same volume at page 695, § 296, it is said:

"The intention of the parties to, and the meaning of, a contract are deduced from the language and contents of the contract, and, where the terms are plain and unambiguous, the contract is conclusive."

In the case of Perkins v. Meeker Sugar Refining Co., 163 La. 227, 111 So. 686, it was held, that:

"Under contract for refining sugar, providing that copies of weights should be delivered to refiner's agent at port of entry, weight of raw sugar, as ascertained by public weighers at such port, governs in determining number of pounds of refined sugar which contract bound refiner to deliver."

And, also, that:

"Provision of contract as to method of determining quantity or weight of produce or other articles, or person or class of persons by whom quantity or weight is to be ascertained, binds parties, in absence of proof of fraud or error."

See, also, Hayday v. Hammermill Paper Co., 176 Minn. 315, 223 N.W. 614, 63 A. L.R. 210; Sanitary Farm Dairies, Inc., v. Gammel, 8 Cir., 195 F.2d 106; Mutual Benefit Health & Accident Ass'n v. United Casualty Co., 1 Cir., 142 F.2d 390.

In the case at bar the terms of the contract are clear and unambiguous, and so acknowledged in effect by defendant's answer admitting that it provided for final settlement on Edward T. Robertson & Son sworn landing weights at Trieste, and therefore conclusive.

■ We find no merit in defendant's second point. In dealing with a somewhat similar situation, it was said in the case of United States v. R. P. Andrews & Co., 207 U.S. 229, 28 S.Ct. 100, 104, 52 L.Ed. 185, and we quote with approval:

"That, as a general rule, the delivery of goods by a consignor to a common carrier, for account of a consignee, has effect as delivery to such consignee, is elementary. That where a purchaser of goods directs their de-

livery for his account to a designated carrier, the latter becomes the agent of the purchaser, and delivery to such carrier is a legal delivery to the purchaser, is also beyond question. Certain also is it that when, on the delivery of goods to a carrier, bills of lading are issued for the delivery of the goods to the consignee or his order, the acceptance by the consignee of such bills of lading constitutes a delivery. *Of course, the presumption of delivery arising from the application of any or all of these elementary rules would not control in a case where, by contract, it clearly appeared that, despite the shipment, the goods should remain at the risk of the consignor until arrival at the point of ultimate destination.*" (Emphasis ours.)

In the case at bar the contract is clear and unambiguous. By the terms thereof the weight settlement of the cotton sold and shipped by plaintiff to defendant was to be made, not aboardship, but at its final destination (Trieste), by defendant's own controller, and such contract was binding on the parties.

Other propositions are urged and discussed but we, likewise, find them without merit and will not pass upon them.

Being of the view that the record discloses no reversible error, the judgment appealed from is affirmed.

It is so ordered.

COMPTON, C. J., and SADLER, Mc-GHEE, and KIKER, JJ., concur.