JOHN V. LYONS, PETITIONER-RESPONDENT, v. P & M TAXI, INC., AND NAT ECKEL t/a GARDEN STATE TAXI CO. AND NICHOLAS P. ZOPPI, RESPONDENTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 6, 1969—Decided January 28, 1969.

Before Judges GAULKIN, COLLESTER and LABRECQUE.

*Mr. Leonard J. Felzenberg* argued the cause for appellants P & M Taxi, Inc. and Nat Eckel t/a Garden State Taxi Co. (*Messrs. Roskein, Kronisch & Felzenberg,* attorneys).

*Mr. M. Marvin Soperstein* argued the cause for respondent John V. Lyons (*Mr. Lee Calligaro,* on the brief).

The opinion of the court was delivered by

LABRECQUE, J. A. D. Appellants P & M Taxi, Inc. (P & M) and Nat Eckel t/a Garden State Taxi Co. (Eckel) appeal from a judgment of the Essex County Court affirming a compensation award in favor of petitioner John V. Lyons.

The facts are substantially undisputed and may be summarized as follows. Prior to March 1963 P & M was the owner of a taxicab, a taxi operator's license issued by the City of Newark and a taximeter. On March 7, 1963 it entered into a lease and purchase agreement with Nicholas P. Zoppi (Zoppi), whereby Zoppi leased the taxi for a two year period for a consideration of $400 down and $25 per week for 104 weeks. At the end of the contract period the taxi, a 1960 Dodge Dart, was to belong to Zoppi. The meter went with the cab but was to be returned to P & M, at the end of the term fixed, in good working order. Under the agreement Zoppi was to retain all fares and tips collected and to pay all expenses of operation, including fees, licenses and premiums on a liability insurance policy covering P & M and himself which he obligated himself to procure. The only specific restrictions on Zoppi's use of the cab were that it was to be operated under the colors and name of "Garden State Taxi Association," in accordance

with the regulations of the City of Newark and to be kept garaged within Essex County.

At the time the Zoppi contract was entered into the stockholders of P & M were Rita Eckel, a full-time schoolteacher, and her parents, Mr. and Mrs. Alberts. They were also the sole stockholders in two other corporations (Crestview Enterprises and Merele). The Garden State Taxi Association was not a corporation but a name (unregistered) adopted by P & M and the two other corporations referred to. Each corporation was licensed to operate one taxi which bore the name Garden State Taxi and was painted yellow and black. The same name and colors had been used by at least one other unaffiliated corporation of different ownership. P & M's only income receipts were the rental and insurance payments from Zoppi. At the time of the occurrence of the events here involved P & M's funds were being handled through the checking account of Crestview, assertedly because P & M was only issuing about one check a month.

Appellant Nat Eckel's income was derived from his operation of the cab owned by Crestview for which he paid a rental fee of $8 or $9 a day. In addition to operating his cab he also performed some errands — without pay — for the three companies in which his wife, Rita, had an interest. Among them were the collection of rental and insurance premiums due from Zoppi and delivery of the insurance stickers required by the city ordinance to be displayed on each cab.

In February 1964 Zoppi and Lyons made an oral agreement for the operation of the P & M cab by Lyons for part of each day (12 hours) for a consideration of $7 a day payable by Lyons to Zoppi. Lyons was to pay for gas and oil used, and keep all fares collected during his 12-hour stint. One month later they entered into a written agreement whereby each was to operate it for 12 hours a day. The agreement provided that each was to retain his own fares and pay for his own gas and oil, repair expenses were to be shared, and Lyons was to pay Zoppi $500 plus $20.62 weekly (the latter was said to represent one-half of Zoppi's obligation under

the arrangement with P & M). The agreement provided that Lyons was acquiring no right of ownership in the taxicab, but upon the expiration of the P & M lease the cab was to be the sole property of Zoppi. The contract was drawn by Zoppi's attorney without the consent or participation of either P & M or Eckel, although Zoppi's lease with P & M had forbidden him to sell, transfer or assign his rights without P & M's consent. While the lease was in effect, Zoppi had had trouble with the Dodge Dart and had substituted for it a Plymouth which he paid for. However, in order that the registration might correspond with the taxi operator's license, the Plymouth was registered under the name of P & M.

On October 31, 1964, while it was being operated by Lyons, the Plymouth was involved in a collision in which he sustained severe injuries. A petition for compensation was filed against P & M, Eckel and Zoppi.

At the trial Zoppi testified that his agreement with P & M did not require him to buy gas and oil at any particular place, he was not part of any radio group (the cab had no radio) and he received no directions as to when or where to operate the cab. Lyons testified he considered himself Zoppi's "working partner." He would sometimes come across Eckel while they were operating their respective cabs, but Eckel never told him how or where to operate the P & M cab or gave him any other instructions. Additional facts will be referred to in connection with the portion of the discussion to which they are pertinent.

The judge of compensation dismissed the claim as to Zoppi and no appeal has been taken from this finding. He determined that Lyons was an employee of P & M and Eckel and entered an award against both. On appeal to the Essex County Court, there was an affirmance. The present appeal followed. The sole issue involved is whether, under the facts adduced, petitioner was in an employment relation with P & M or Eckel, or both, at the time he was injured.

On review, we are ordinarily required to determine whether the findings of the County Court could reasonably

have been reached on sufficient credible evidence present in the record, considering the proofs as a whole and giving due regard (in cases involving disputed facts) to the opportunity of the one who heard the witnesses to judge their credibility. *Close v. Kordulak Brothers*, 44 *N. J.* 589, 599 (1965). However, as noted, the parties are in general agreement as to the facts and, while certain of the County Court's findings are asserted to be without factual basis, appellants' challenge is principally directed to the County Court's conclusions based thereon.

■ It is axiomatic that the statutory relationship which is a prerequisite to the entitlement of a petiioner to workmen's compensation depends upon the existence of a contract of hiring, either express or implied. *Bendler v. Bendler,* 3 *N. J.* 161, 167–168 (1949). Considered in terms of the relationship between Lyons and the appellants P & M and Eckel, we are satisfied that Lyons was never expressly or impliedly hired by them, and that he never thereafter acquired the status of an employee of either.

■ Turning first to the finding against Eckel, the proofs are plenary and without contradition that he was not an officer or employee of P & M or its two affiliated companies, and that the only service he rendered P & M was to collect (we are not told how frequently) the rent and insurance payments due from Zoppi and deliver the monthly insurance stickers. There was no factual basis for the County Court's conclusion that, as Garden State Taxi, he "managed" P & M's cab, exercised "control" over petitioner or had the right to do so. Observing Lyons driving Zoppi's cab on occasion did not amount to the exercise of control over him. Garden State did not exist as an entity engaged in the management of taxicabs. The title "Garden State Taxi" and the colors associated with that title, which were attributed to Eckel, were no more than the trade name and identification assumed by the owners of the three cabs referred to. At most, Eckel was their unsalaried agent, a status which precluded any award against him. Whether manager or agent, he was

not Lyons' employer. *Naseef v. Cord, Inc.,* 90 *N. J. Super.* 135, 144 (*App. Div.* 1966), affirmed 48 *N. J.* 317 (1966).

■ Proof was likewise entirely lacking as to any express hiring or other business relationship between Lyons and P & M. Lyons, while conceding the absence of any agreement between him and the appellants, argues that he was a partner of Zoppi whose agreement with P & M was one of hiring, hence the decision in this case "must be controlled" by *Hannigan v. Goldfarb,* 53 *N. J. Super.* 190 (*App. Div.* 1958) and *Naseef v. Cord, Inc., supra.* However, as we stressed in *Hannigan,* whether a taxi driver is "in fact, an employee must be determined not upon that arrangement alone but upon the totality of the facts surrounding the relationship." (at *pp.* 195–196). Wholly aside from other considerations, we find neither *Hannigan* nor *Naseef* to be apposite.

In *Hannigan* the injured petitioner was a cab driver operating a cab owned by Goldfarb under a "three-phase arrangement" designated as a lease. Under its terms he was to pay Goldfarb $8 per day for each 12-hour shift he operated one of Goldfarb's cabs. During the period he operated the cab he was permitted to retain all fares and tips collected and required to pay for all gas and oil used. Goldfarb owned five such taxicabs and managed five others belonging to his mother. He was a member of the 20th Century Taxicab Association (20th Century), a New Jersey corporation composed of cab owners like himself. Goldfarb operated only through the association and his cabs were painted the same color and bore the same "20th Century Cab" insignia as did those of the other members.

20th Century's certificate of incorporation provided that one of its purposes was to "regulate the methods and pass rules and to enforce such rules for the carrying on of the taxi cab business under one uniform system, and which shall apply to all of its members." *Hannigan, supra,* at *p.* 197. Each member of the association was responsible for the conduct of his cab. If a driver misbehaved, he would be repri-

manded. When a "new man" came on the job, someone would be sent out with him for a day of two to assist in his training. Each driver (as distinguished from the owner), in addition to being specially licensed by the city, was required to register with the association. The association maintained a garage. It had offices where employees received telephone requests for taxi service and relayed them to the nearest member cabs (they were radio equipped). It also maintained call boxes and taxi stands for its members and provided forms for keeping track of trips made by them. Its supervisors saw to it that its regulations were enforced. *Naseef, supra,* involved a lease between Naseef, the cab driver, and Cord, Inc., also a member of 20th Century, under a similar arrangement.

Under such a state of facts we held that Goldfarb, who operated only through 20th Century, was engaged in the operation of a line of taxicabs as a common carrier of passengers, rather than in the mere leasing of taxicabs and that, Hannigan, as the driver of one such cab, qualified as an employee under both the "control" and "relative nature of the work" tests. *Hannigan, supra,* at *p.* 206.

The facts present in *Hannigan,* on which our foregoing findings necessarily depended, are conspicuously absent from the proofs before us. Garden State, as distinguished from 20th Century, was not even a "paper" association. It had no books, payroll, money, office or records. It had no means of soliciting business or communicating with member cabs. It had no rules of its own to which the operators of member cabs were required to adhere; furnished no facilities for the carrying on of their business and took no means of assuring that the city taxi regulations were being complied with. As the avenue whereby liability was to be imposed upon P & M, it was totally ineffective.

As to P & M itself, it would be a distortion of the facts to hold that such a corporation, composed of a schoolteacher and her parents, and owning but one licensed cab, which was leased out for a two-year period, was engaged in

any activity beyond the leasing of its cab. Under its contract it retained no control over the operation. Although, unlike *Hannigan,* it had ample opportunity, through Eckel, to give directions as to the cab's operation, it is clear beyond dispute that it did not do so. Zoppi could purchase gas and oil and contract for repairs wherever he pleased. He substituted another cab when he decided this was necessary.

Wholly aside, Lyons was a stranger to the contract between Zoppi and P & M. The agreement which was the basis for his claimed status as Zoppi's partner was in clear violation of Zoppi's agreement with P & M, an undivided interest in which Zoppi was purporting to convey to Lyons. It was undisputed that consent to the execution of the Zoppi-Lyons agreement was never applied for or obtained from P & M, and that neither P & M nor Eckel ever had notice of the agreement, or of Lyons' claimed status as a partner in the operation of P & M's cab. Regardless of its effectiveness as between Zoppi and Lyons, Lyons acquired no rights against P & M through it.

We turn, finally, to consideration of Lyons' contention that since the lease to Zoppi was held by the County Court to be invalid because in violation of the provisions of the Newark taxicab ordinance which precluded this type of leasing, he thereby became P & M's employee for the purpose of carrying out its obligations as a taxi owner. Although the provisions of the Newark City ordinance assertedly violated (we are told they have since been amended) were discussed fully in *Hannigan* and *Naseef,* in neither case did we hold that such violations, without more, compelled a finding that the lessor and lessee thereby became employer and employee for purposes of workmen's compensation. See however, *Wilson v. Kelleher Motor Freight Lines, Inc.,* 12 *N. J.* 261, 265–266 (1953).

Although not raised below, appellants now strenuously challenge the constitutionality of the provisions of the Newark ordinance referred to. We find it unnecessary to decide

the point. Assuming the validity of the ordinance in every respect, its violation through the instrumentality of P & M's lease could not create the relationship of employer and employee between P & M and Lyons, a stranger to the contract, and one with whom it had had no subsequent contractual dealings.

The judgment is accordingly reversed and the matter remanded to the County Court for the entry of judgment for appellants.