637 P.2d 846

Linda JELSO, Plaintiff-Appellant,

v.

WORLD BALLOON CORPORATION, Employer, and Travelers Insurance Company, Insurer, Defendants-Appellees.

No. 5152.

Court of Appeals of New Mexico.

Nov. 24, 1981.

Harold H. Parker, Angela J. Jewell, Albuquerque, for plaintiff-appellant.

Alice Tomlinson-Lorenz, Gregory W. Chase, Miller, Stratvert, Torgerson & Brandt, Albuquerque, for defendants-appellees.

## OPINION

DONNELLY, Judge.

Plaintiff seeks reversal of a trial court order granting summary judgment for defendants and dismissing with prejudice plaintiff's complaint for workmen's compensation benefits. We affirm.

World Balloon Corporation (W.B.C.), was in the business of constructing and selling hot air balloons and related equipment. The plaintiff had been employed by W.B.C., sewing and repairing hot air balloons, running errands, working as a crew member and assisting with public relations and commercial advertising for defendant's products.

The facts as set forth in plaintiff's affidavit filed in opposition to the motion for summary judgment and as set out in the plaintiff's brief in chief are essentially undisputed. The only question raised is whether plaintiff was an employee of W.B.C. at the time she sustained her injury. The facts as set forth by plaintiff, reveal that on November 19, 1979, plaintiff's employment was terminated by W.B.C. The following day plaintiff was given her paycheck. At the time of her termination, plaintiff was informed that possibly, depending upon business conditions, she would be reemployed in the spring. On the same day, she asked Paul Woessner, vice president of W.B.C., if the company would need any assistance on November 21, 1979, with the test flight of a hot air balloon the company had constructed for Anheuser-Busch Corporation. Mr. Woessner answered yes. In its brief, W.B.C. disputes that this conversation took place.

Shortly before the launch of the new balloon on November 21, the plaintiff went to the launch-site and reported to the crew chief for W.B.C. She was instructed initially to handle a rope at the nose of the balloon. Later she was told to stand ready with a fire extinguisher in case of fire. At the site, W.B.C. furnished refreshments for assisting personnel and plaintiff partook of the coffee, hot chocolate and juice provided. Plaintiff was standing near the car, or gondola, of the balloon when it suddenly tipped over, causing another individual inside the gondola to fall on top of, and strike, plaintiff. As a result of this accident, plaintiff suffered a serious injury to her right knee.

Plaintiff reported the injury to Mr. Woessner at the launch-site. He told her to go to a doctor and to send the bill to W.B.C.

The parties dispute whether Mr. Woessner told plaintiff that W.B.C.'s insurance would actually cover the injury. Plaintiff went to a doctor selected by her and received medical treatment for the injury. An accountant employed by W.B.C. filed an Employer's First Report of Injury form with its insurance carrier, defendant Traveler's Insurance Company. The report stated that plaintiff was an employee of W.B.C. and that she was injured on the job.

Depositions filed by defendant W.B.C. state that it later withdrew the accident report, indicating that the report had been filed by mistake.

Subsequently, W.B.C. refused to pay workmen's compensation benefits to plaintiff and plaintiff filed suit against W.B.C. and its insurance carrier seeking alternatively under Count I, workmen's compensation benefits, or under Count II, damages for alleged negligence of defendant W.B.C.

Defendants filed separate motions for summary judgment directed at the claim of damages for negligence and the claim for workmen's compensation benefits. On October 16, 1980, the trial court dismissed Count II, the negligence claim, without prejudice. The court's order dismissing the negligence claim is not involved in this appeal.

Thereafter, following a hearing, the trial court granted summary judgment on Count I in favor of defendants. It dismissed with prejudice plaintiff's claim for workmen's compensation benefits.

Defendants' motion for summary judgment was predicated on the contention that (1) plaintiff was not an employee of defendant at the time of her injury, and (2) the injury was not incurred in the course and scope of her employment.

On appeal, plaintiff contends that genuine issues of material fact exist as to whether plaintiff was an employee at the time of her injury, because (1) W.B.C. filed the employer's first report of injury, (2) defendant had control over the details of plaintiff's duties and performance, had power to terminate her work and compensated her for

her services, (3) defendant created an emergency employment situation and (4) plaintiff was at the time of the accident, performing services which constituted a regular part of defendant's business.

Each of the points raised by plaintiff on appeal are sub-issues of the dispositive question of whether an employer-employee relationship existed when plaintiff was injured. We discuss such issues jointly.

Supportive of defendant's motion for summary judgment were two affidavits: one of Paul Woessner, vice president of W.B.C.; and one of Jerry Burkholder, accountant and bookkeeper for W.B.C. Both stated that plaintiff had been terminated from employment and had received her final paycheck on November 20, 1979. Attached to the second affidavit was a copy of the plaintiff's final paycheck.

The plaintiff acknowledged these facts in her affidavit in opposition on the motion for summary judgment. Plaintiff's affidavit stated that on November 20, 1979 as she was leaving the office, she spoke to Paul Woessner. She inquired if W.B.C. needed help with the test flight of the new balloon. Mr. Woessner responded, "Yes, we need all the help we can get, come out and help us." Plaintiff's affidavit further set forth her activities at the launch site and the assignments she was given in assisting with the launch. Plaintiff also stated in her affidavit that the test flight of the balloon was an emergency situation and that she had been "hurt on the job."

The rules for determining whether to grant summary judgment are succinctly enumerated by Judge Sutin in *First Nat. Bank in Albuquerque v. Nor-Am Agr. Products Inc.*, 88 N.M. 74, 537 P.2d 682 (Ct.App.), *cert. denied*, 88 N.M. 28, 536 P.2d 1084 (1975). As therein stated:

(1) A summary judgment proceeding is not to decide an issue of fact, but, rather, to determine whether one exists.

(2) Summary judgment can be granted only where the record shows there is no genuine issue as to any material fact.

(3) The party opposing the motion for summary judgment must be given the

benefit of all reasonable doubts in determining whether an issue of fact exists. (4) Summary judgment can be granted only where the moving party is entitled to the judgment as a matter of law, upon clear and undisputed facts.

(5) Summary judgment proceedings must not be used as a substitute for trial.

Summary judgment, being an extreme remedy, is to be employed with great caution and cannot be substituted for a trial on the merits as long as one issue of material fact is still present in the case. *Fischer v. Mascarenas*, 93 N.M. 199, 598 P.2d 1159 (1979); *Fidelity Nat. Bank v. Tommy L. Goff, Inc.*, 92 N.M. 106, 583 P.2d 470 (1978).

■ Summary judgment, however, is proper when the moving party is entitled to a judgment as a matter of law. N.M.Civ.P. Rule 56(C), N.M.S.A. 1978; *Worley v. United States Borax & Chemical Corp.*, 78 N.M. 112, 428 P.2d 651 (1967); *Institute for Essential Housing, Inc. v. Keith*, 76 N.M. 492, 416 P.2d 157 (1966). The purpose of summary judgment is to eliminate a trial in cases where there is no genuine issue of fact, even though factual issues are raised in the formal pleadings. *Aktiengesellschaft, etc. v. Lawrence Walker Cotton Co.*, 60 N.M. 154, 288 P.2d 691 (1955); see, *Fidelity Nat. Bank v. Tommy L. Goff, Inc.*, supra. Where the facts before the court are not in dispute but only the legal effect of the facts is presented for determination, summary judgment may be properly granted. *Meeker v. Walker*, 80 N.M. 280, 454 P.2d 762 (1969); *Worley v. United States Borax & Chemical Corp.*, supra; *Sanders v. Smith*, 83 N.M. 706, 496 P.2d 1102 (Ct.App.), cert. denied, 83 N.M. 698, 496 P.2d 1094 (1972).

■ Viewing all of the evidence in a light most favorable to plaintiff, the trial court's granting of summary judgment was proper. At the summary judgment hearing, the trial court had before it the affidavits of the parties and the depositions on file with the court. The material facts before the court were not in dispute, only the determination of the legal conclusions to be drawn therefrom. Whether plaintiff was an employee of W.B.C. at the time of her injury was a legal conclusion, and it would have been improper to have found the existence of such relationship as a fact. *Latta v. Harvey*, 67 N.M. 72, 352 P.2d 649 (1960); see also, *Creley v. Western Constructors, Inc.*, 79 N.M. 727, 449 P.2d 329 (1969); *Candelaria v. Board of County Commissioners*, 77 N.M. 458, 423 P.2d 982 (1967); *Roybal v. Bates Lumber Co.*, 76 N.M. 127, 412 P.2d 555 (1966).

■ Where the material facts are undisputed and susceptible of but one logical inference, it becomes a conclusion of law as to whether the status of an employer-employee relationship exists. See *Candelaria v. Board of County Commissioners*, supra; *Kress Packing Co., Inc., v. Kottwitz*, 61 Wis.2d 175, 212 N.W.2d 97 (1973).

The courts in New Mexico have clarified these rules in determining whether an individual was an employee within the meaning of our Workmen's Compensation Act. In *Creley v. Western Constructors, Inc.*, supra, it was held:

> The question of whether the claimant worked for one or the other of these corporations is one of fact, as distinguished from the question of whether the relationship of master and servant or that of independent contractor existed, which is a conclusion of law.

Similarly, in *Tavel v. Bechtel Corp.*, 242 Md. 299, 219 A.2d 43 (Ct.App.1966), a summary judgment denying workmen's compensation was affirmed. The court held in such case; "On the undisputed facts and any inference which may properly be drawn from them, we find, as a matter of law, that Tavel's injuries did not arise out of and in the course of his employment . . . ." The court reasoned:

> Where the term and manner of employment are disputed and different inferences may be drawn therefrom, the issue is a mixed question of law and fact, to be determined by the trier of facts * * * but where the essential terms and manner of employment are undisputed, the question is one of law for the court.

■ In order to qualify for compensation benefits, an individual must establish, among other facts, the existence of material facts to support a conclusion that the individual was employed at the time of incurring an injury, and entitled to the payment of wages or financial remuneration for services rendered. See *Mendoza v. Southwestern Coal Co.*, 41 N.M. 161, 66 P.2d 426 (1937).

The term "workman," as defined in the New Mexico Workmen's Compensation Act, § 52–1–16, N.M.S.A. 1978 (Supp.1981), includes "employee" and means "any person who has entered into the employment of or works under contract of service or apprenticeship, with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business."

In *Mendoza v. Gallup Southwestern Coal Co.*, supra, the court stated:

The words "employer and employee" as used in the New Mexico Workman's Compensation Act are used in their natural sense and intended to describe the conventional relation between the employer who pays wages to an employee for his labor.

The court in *Mendoza* also held that, to be entitled to compensation under our Workmen's Compensation Act, an employee "must be one who is earning money, at or immediately prior to the time of his injury from an employer as defined by the statute." Recent amendments have not changed the import of such decision. See also, *Perea v. Board of Torrance County Commissioners*, 77 N.M. 543, 425 P.2d 308 (1967).

■ The principle test for determining whether an employer-employee relationship exists, as opposed to an independent contractor relationship, is whether the employer has the right to control the details of the work. *Barger v. Ford Sales Co., Inc.*, 89 N.M. 25, 546 P.2d 873 (Ct.App.), *cert. denied*, 89 N.M. 206, 549 P.2d 284 (1976). The right of control is only one of several factors to be considered. In *Kress Packing Co., Inc. v. Kottwitz*, supra, it was held:

[T]he primary test for determining the existence of an employer-employee relationship is whether the alleged employer has a right to control the details of the work; and among the secondary tests which should be considered are: (1) the direct evidence of the right of control; (2) *the method of payment* of compensation; (3) the furnishing of equipment or tools for the performance of the work; and the right to fire or terminate the relationship. (Emphasis supplied).

■ Moreover, to establish the relationship of employer-employee in the workmen's compensation context, there must exist a mutuality of obligations and agreement; there must be present both a duty of employee to perform services subject to an employer's right to control the details of performance, and the worker's right to receive compensation. See *Harmon v. Atlantic Richfield Company*, 95 N.M. 501, 623 P.2d 1015 (Ct.App.1981); *Mendoza v. Gallup Southwestern Coal Co.*, supra; *Hall v. State Fund*, 154 Colo. 47, 387 P.2d 899 (1963); *Novenson v. Spokane Culvert & Fab. Co.*, 91 Wash.2d 550, 558 P.2d 1174 (1979).

Under the Workmen's Compensation Act in force in New Mexico, in order to be considered a "workman" or "employee" subject to coverage thereunder, there must exist both a right of the employer to control the details of the work of the employee, and a contract express or implied of employment for hire. Larson observes in his text, Workmen's Compensation Law, Vol. 1C, § 47.19 at 8–235 (1980):

There is also a sound reason for the requirement that the employment be "for hire." * * * [I]n a compensation case, the entire philosophy of the legislation assumes that the worker is in a gainful occupation at the time of the injury. The essence of compensation protection is the restoration of a part of the loss of wages which are assumed to have existed. Merely as a practical matter, it would be impossible to calculate compensation benefits for a purely gratuitous worker, since benefits are ordinarily calculated on the basis of earning.

Larson further notes that the word "hire" connotes payment of some kind. In contrast with the common law of master and servant, which recognized the possibility of having a gratuitous servant, workman's compensation decisions uniformly exclude from the definition of "workman" employees who neither receive nor expect to receive any kind of pay for their services. 2C Larson, supra § 47.41, at 8–255.

Under the New Mexico Workmen's Compensation Act, there must be some basis upon which an award can be calculated. Section 52–1–20 N.M.S.A. 1978, specifies that the "average weekly wage" shall be taken as the basis upon which to compute benefits to a workman entitled to compensation under the Workmen's Compensation Act.

As stated in *Gilliland v. Hanging Tree, Inc.*, 92 N.M. 23, 582 P.2d 400 (Ct.App.), *cert. denied*, 92 N.M. 180, 585 P.2d 324 (1978):

'[A]verage weekly wage' has a statutory meaning. *La Rue v. Johnson*, supra, [47 N.M. 260, 141 P.2d 321 (1943)]. It means the money rate at which services are recompensed 'at the time of the accident.' Section 59–10–12.13 (A), supra, [now at § 52–1–20 N.M.S.A., 1978]. See *Stevens v. Black, Sivalli & Bryson*, supra, [39 N.M. 124, 42 P.2d 189 (1935)]. The fair determination of average weekly wage under § 59–10–12.13 (C) requires a wage of some kind. * * * At the time of accident, decedent had no wage and thus had no basis for computing an average weekly wage. The speculative possibility that some time in the future decedent might be paid for services performed * * * was not a wage within the statutory meaning.

Plaintiff was not a "workman" within the contemplation of the New Mexico Workmen's Compensation Act. She occupied the status of a volunteer. A volunteer gives services voluntarily and gratuitously, without any express or implied promise of remuneration in return, and in general is not entitled to the benefits of workmen's compensation laws. See *Ferrell v. Industri-*

*al Commission of Arizona*, 79 Ariz. 278, 288 P.2d 492 (1955); *Edwards v. Hollywood Canteen*, 27 Cal.2d 802, 167 P.2d 729 (1946); *Seward v. State*, 75 Idaho 467, 274 P.2d 993 (1954); *Chicago & E.I.R.R. Co. v. Argo*, 82 Ill.App. 667 (1898); *Bituminous Casualty Co. v. Industrial Commission*, 245 Wis. 337, 13 N.W.2d 925 (1944).

Plaintiff asserts that the act of filing the Employer's First Report of Injury form describing plaintiff as an employee constitutes an admission against interest giving rise to a factual issue as to whether plaintiff was, at the time of her injury, an employee of W.B.C. Plaintiff argues that the report gives rise to an inference that plaintiff was considered an employee and hence constitutes a disputed material fact precluding summary judgment. The fact that such report was made is undisputed, as is also the fact that such report was later withdrawn by defendant W.B.C.

In support of this contention plaintiff cites several decisions of the New Mexico Courts: *Michael v. Bauman*, 76 N.M. 225, 413 P.2d 888 (1966); *Gilbert v. E.B. Law and Son, Inc.*, 60 N.M. 101, 287 P.2d 992 (1955); *Johnson v. J.S. & H. Construction Co.*, 81 N.M. 42, 462 P.2d 627 (Ct.App.1969).

*Johnson v. J.S. & H. Construction Co.*, supra, held improper the granting of summary judgment for defendant in a workmen's compensation act, where defendant filed an accident report describing plaintiff as its employee and defendant's insurer paid weekly compensation and medical benefits. A disputed factual question existed as to whether plaintiff was a loaned or special employee of Lembke Construction Company, or whether plaintiff was an employee of J.S. & H. Construction Company.

*Gilbert v. E.B. Law and Son, Inc.*, supra, upheld a judgment awarding workmen's compensation. It held that the making of an accident report by the employer and payment of workmen's compensation benefits by the insurer constituted an admission against interest by the employer and insurer sufficient to support an award of com-

pensation. The court noted that defendant failed to offer any evidence showing that such payments were made under mistake of facts. In *Michael v. Bauman*, 76 N.M. 225, 413 P.2d 888 (1966), following a trial on the merits, the court held that payment of compensation benefits may constitute an admission against interest of an employer or insurer, but that such admission was rebuttable and not conclusive.

In each case cited by plaintiff, issues of material fact existed. In each, the admissions were material to the issue of whether the workman's injury arose out of and in the course of employment. The question of whether the workman was employed at all was not before these courts.

The filing of the report in the instant case is insufficient, standing alone, to support a legal conclusion that an employment relationship existed. Plaintiff failed to plead any agreement on the part of W.B.C. to pay her compensation or that any wages were earned at the time of the accident. A careful reading of the affidavit of plaintiff in contravention of the motion for summary judgment, the depositions and matters before the trial court do not establish the existence of any material fact that plaintiff was to be compensated for assisting with the launching of the new balloon. In the instant case, it is undisputed that there was no agreement to pay plaintiff any wages or money for assisting at the balloon launching. It is undisputed that plaintiff was informed of the fact of her termination on November 19, 1979, and was given her final paycheck the following day. It is also undisputed that plaintiff and W.B.C. never discussed any payment for services plaintiff performed at the subsequent balloon test launching on November 21, 1979.

In plaintiff's deposition, tendered at the motion hearing on summary judgment, plaintiff stated:

Q. Did you think that you were going to be paid for going out there on Wednesday, the 21st?

A. Paid by what, money?

Q. Did you think that you were going to receive a salary?

A. I didn't think I was going to receive any money. It wasn't something that they paid by the day to do.

Plaintiff's affidavit in part stated that she "was very interested in a career in the balloon industry and it would have been important training for me to be in the actual launching of an airship of this kind." While under some circumstances training or apprenticeship may constitute a form of remuneration, here there were no material facts or reasonable inferences indicating the existence of any agreement to compensate plaintiff as required by the New Mexico Workmen's Compensation Act under the authorities described, supra.

Plaintiff contends that she was paid by being served "refreshments," receiving training, and the possibility of future employment. She points to authorities from other jurisdictions holding that the element of payment to satisfy the requirement of a contract of hire need not be in money, but may be anything of value such as board, room or training, and which may be treated as the equivalent of wages. The authorities relied upon by plaintiff are significantly distinguishable from the facts presented to the trial court, and contrary to decisions interpreting the provisions of our Workman's Compensation Act. See *Mendoza v. Gallup Southwestern Coal Co.*, supra.

The hope of future employment alone was held insufficient evidence to show a contract for hire in *Associated Employers Lloyds v. Gibson*, 245 S.W.2d 738 (Tex.Civ. App.1951). The plaintiff, while in search of a part-time job, voluntarily offered to fix a machine with a view toward impressing the prospective employer. While working on the machinery, plaintiff was injured and filed suit against the defendant alleging coverage under the Workmen's Compensation Act. The Texas Court of Appeals, in construing such claim, considered a section of the state's laws defining an "employee" subject to coverage. The court there held:

Even after the work had been completed [the plaintiff] made no mention of any pay. * * * All the facts and circumstances, when taken together, do not show a contract of hire either expressed or implied * * *.

In a further effort to ward off judgment, plaintiff asserts the additional argument that an "emergency" situation existed, which invested employees involved in the launching of the new balloon with the implied authority to employ her; that although no express contract of employment existed, nevertheless an implied contract of hiring existed.

Plaintiff contends that the facts before the trial court raise the inference that an "emergency" situation existed. Larson in 1C Workmen's Compensation Law, supra, § 47.24 (C) at 8–277, discusses such rule:

It is well established that a person who is asked for help in an emergency which threatens the employer's interest becomes an employee under an implied contract of hire.

\* \* \* \* \* \*

For this kind of implied hiring authority to arise there must, of course, be a genuine emergency ruling out normal procedures for hiring or for obtaining permission to engage assistance.

Even construing all the facts in a light most favorable to plaintiff, as we must, such facts do not indicate the existence of an emergency giving rise to an implied contract of employment. For an emergency to exist, a sudden unexpected event calling for immediate action to meet the situation must have occurred. See *Seward v. State,* 75 Idaho 467, 274 P.2d 993 (1954). *Bogart v. Hester,* 66 N.M. 311, 347 P.2d 327 (1959); *Tipper v. Great Lakes Chemical Co.,* 281 So.2d 10 (Fla.1973); *Wolverine Ins. Co. v. Jockish,* 83 Ill.App.3d 411, 38 Ill.Dec. 686, 403 N.E.2d 1290 (1980); *Conveyors' Corp. v. Industrial Commission,* 200 Wis. 512, 228 N.W. 118 (1929). There is neither evidence nor allegation that the test-flight was sudden, unexpected, or one that required immediate action. In fact, plaintiff concedes in her brief that defendant "had a habit of * * * using interested people" to help with such flights.

To withstand a motion for summary judgment herein, it was incumbent upon plaintiff to come forward with facts indicating the existence of a contract for hire wherein plaintiff was to receive payment in wages or something of value which were understood by the parties to constitute the equivalent of wages. A contract requires a mutual meeting of the minds of both parties. *Trujillo v. Glen Falls Insurance Co.,* 88 N.M. 279, 540 P.2d 209 (1975); *Lamonica v. Bosenberg,* 73 N.M. 452, 389 P.2d 216 (1964).

■ The existence of the relationship of employer and employee depends upon a contract of employment and cannot exist without mutual assent, express or implied. *Wolverine Ins. Co. v. Jockish,* 83 Ill.App.3d 411, 38 Ill.Dec. 686, 403 N.E.2d 1290 (1980); *Holm v. H & S Asphalt Co.,* 283 Minn. 330, 167 N.W.2d 743 (1969).

Plaintiff's injury occurred following the date she was advised by her employer that she was officially terminated from employment. As stated in *Lyons v. P & M Taxi, Inc.,* 104 N.J.Super. 457, 250 A.2d 419 (Super.Ct.App.Div.1969): "It is axiomatic that the statutory relationship which is a prerequisite to the entitlement of a petitioner to workmen's compensation depends upon a contract for hiring, either express or implied." Injuries occurring where the complaint is not within the statutory definition of a "workman" or after an employee has officially severed his employment are not compensable under the workmen's compensation laws. See, *Clark v. First Baptist Church,* 570 P.2d 327 (Okla.1977); *Brady v. Oregon Lumber Co.,* 117 Ore. 188, 243 P. 96, 45 A.L.R. 812 (1926).

A critical reading of the affidavits and depositions indicates that no material disputed facts existed concerning any agree-

ment express or implied for the payment of wages or their equivalent to plaintiff. Those material facts being undisputed, it became a question of law as to whether plaintiff was in the course and scope of her employment at the time of the accident.

A careful review of all the facts, even after interpreting all such facts in a light most favorable to plaintiff, together with all reasonable inferences to be drawn thereon, compellingly establish that the trial court's order granting summary judgment as to the claim for workmen's compensation should be upheld.

Affirmed.

IT IS SO ORDERED.

SUTIN and LOPEZ, JJ., concur.