Matthew M. Lew, J.
(I)
The petitioner, Moshe Kozlowski (suing herein as Moritz Kozlowski) brings this special proceeding to obtain inspection of the corporate books of the respondent Seville Syndicate, Inc. (Seville), a close corporation. Menachem Margulies1 (sued as Mundek Margulies) and Techeskiel Morganstern (sued as Charles Morgenstern) —who, together with the petitioner, constitute all the parties currently or formerly having an interest in Seville — are also parties respondent. The petitioner’s right to the inspection sought depends upon whether, at this time, he has an appropriate interest in Seville.
During the past several years, difficulties have arisen between the petitioner on the one hand, and the individual respondents. on the other. Commencing in 1965, numerous legal proceedings were initiated between the parties concerning the management of the corporation and other matters, including suits for defamation. In September of 1967, as a result of legal action commenced by the petitioner, Seville’s major asset, a Manhattan hotel, was sold, the corporation receiving a purchase-money mortgage securing a note for approximately $1,250,00.0, *111 payable in quarterly payments of roughly $25,000 for 10 years, with the balance due at the expiration of the 10 years. Due to conflicting claims among the parties as to the proper respective shares of the assets, no distribution was ever made.
In the spring of 1968, the individual parties — being desirous of settling their differences — met with Rabbi Israel Yitzchok Piekarski, who, like themselves, is an Orthodox Jew. As a result, on May 20 of that year, the three entered into an agreement, written on Rabbi Piekarski’s letterhead in Talmudic Hebrew, and signed by the three stockholders, which, according to the translation in evidence, reads as follows: “We each submit ourselves to the decision of Rabbi Israel Yitzchok Piekarski. It is Rabbi Piekarski’s privilege to take to himself two other rabbis and whatever will be the decision, whether by Din Torah or by compromise similar to Din Torah, we undertake to obey such in all respects. Furthermore, with respect to the matter of the corporation (problem) we rely on Rabbi Piekarski to consult an attorney with respect to what he may suggest as best in both matters.
“ [Dated] Bechikoisai 2-5728.
“ [Signed] Menachem Margulies
“ [Signed] Yecheskiel Morganstern
“ [Signed] Moshe Kozlowski ”
Pursuant to the agreement of May 20,. there were held two meetings at the Rabbi’s house attended by the petitioner, the individual respondents, the Rabbi and one Zuker (a friend of the petitioner). Also present was Isaac Strahl, Esq., a member of the New York Bar and a Talmudic scholar, who attended at the Rabbi’s invitation, in accordance with the provision in the agreement permitting the Rabbi to consult an attorney. These meetings (on June 10 and July 16 of 1968) resulted in a document written on the Rabbi’s letterhead, dated the Jewish equivalent of July 16, 1968, which, as translated from the Talmudic Hebrew, reads as follows:
“In the matter of the differences between Syndicate, Inc., 22 E. 29th Street, New York and Moshe Kozlowski of 2275 Barker, Bronx.
‘1 Mr. Margulies and Mr. Morgenstern are required to pay annually to Mr. Moshe Kozlowski 21,000 twenty-one thousand dollars until the termination of the mortgage. And the taxes (before each payment- to Kozlowski) are to be paid by the corporation. And the corporation, whether it makes profits or *112 sustains losses such belong solely to Mr. Margulies and to Mr. Morgenstern. Mr. Margulies and Mr. Morgenstern are responsible with all their assets for the payment annually of the twenty-one thousand dollars due to Mr. Kozlowski.
“ This is the first part of the Din Torah. The Din Torah will be concluded soon. From this day on it is forbidden to pursue further court proceedings both by Mr. Margulies and Mr. Morgenstern and also by Mr. Kozlowski (against each other).
“ Dated: 20 days in Tammuz, 5728, in Queens.
“ (Signed) Israel Yitzchok PiekarsM.
“ KB. Upon the termination of the mortgage % of the balance then due thereon belongs to Mr. Kozlowski.
“ (Signed) Menachem Margulies
Yecheskiel Morgenstern
Moshe Kozlowski ’ ’
Thereafter, a stockholders’ meeting of Seville was held, of which meeting the petitioner did not receive notice, and he and his wife were removed from their respective offices and directorships in Seville.
It is the position of the respondents that, following the paper-writing of May 20, the July 16 document quoted above — whether considered as an arbitrator’s award or as a settlement agreement — worked the termination of the petitioner’s interest in the corporation. Therefore, they maintain, the subsequent shareholders’ meeting was properly held, that the removal by the shareholders at that meeting of the petitioner and his wife from their offices and directorships was valid, and that petitioner, being neither a stockholder nor a director nor an officer, it is argued, has no right to inspect the books of the corporation. If, as contended by the petitioner on the other hand, the respondents’ interpretation of the July 16 document is incorrect, then the petitioner’s interest in Seville continues, the stockholders’ meeting was invalid, and the petitioner remains a stockholder, director, and officer, and there can then be no question as to his right to an inspection of the corporate books.
There is no serious dispute that all of the parties signed the May 20 agreement as indicated, but before I may determine the legal significance of the July 16 document,. I must dispose of a threshold question of the legitimacy of the petitioner’s signature thereon.
*113 The petitioner does not deny that the signature is his, but asserts that he signed a blank sheet of paper on the day that he and the individual respondents first appeared before Rabbi Piekarski, and that there was no textual matter above his signature at that time, and that is what now has come to be the addendum to the July 16 award. If his assertion is accepted as fact, it would of course destroy the legal effect of the document insofar as the same is dependent upon the petitioner’s signature.
Arrayed against the assertion of the petitioner in this regard is the testimony of the respondent Margulies (which by stipulation would have been the testimony of the ill respondent Morgenstern as well), of Rabbi Piekarski, and of Mr. Strahl, that the petitioner executed the document after it was completed, and not before. On this disputed' question of fact, I find that the document was fully finished at the time that the petitioner signed it, and that accordingly he is bound by whatever legal consequences flow from his assent thereto.
(H)
Jewish jurisprudence, as it has developed over the millenia, has a number of devices for resolving disputes among persons of that faith. One method is by “ Din Torah ”, the traditional Jewish “court of law”, which proceeds strictly according to Jewish law; another method is by “ Pesharah ”, which is, effectively, an arbitration tribunal. A Pesharah may seek to compromise the parties ’ claims, and is not bound to decide strictly in accordance with the governing rules of Jewish law, but may more carefully weigh the equities of the situation. (Kaplan, Rabbinical Courts: Modern Day Solomons, Columbia Journal of Law and Social Problems, N. Y. L. J., July 22, 1970, p. 1, col. 4; Matter of Hellmam [Wolbrom], 31 A D 2d 477, 479 [1st Dept., 1969]).
Whether the proceeding be by Din Torah or by Pesharah, it is, of course, from the point of view of the law of the State of New York, an arbitration proceeding — statutory or common law. If it complies with the requirements set forth in article 75 of the CPLR, then it may be considered a statutory arbitration and in such case article 75 will be fully applicable. If it fails to meet these requirements, then the proceeding will be a common-law arbitration, and it is that body of law which supplies the governing principles.
As the written agreement of May 20, set forth above, shows a clear intent on the part of the parties to have Rabbi Piekarski *114 arbitrate their controversy (see Kadushin, Jewish Code of Jurisprudence [4 ed., 1923] p. 15, par. 10), I hold that the incipient requirement of CPLB 7501 has been met, and that the proceeding in question may constitute a statutory arbitration to which the implementary provisions of article 75 are applicable.
(Ill)
At the close of the trial, the petitioner moved to conform the pleadings to the proof, and the motion was granted without objection. Narrowly construed, this amendment would presumably encompass only the proof presented in pursuance of rn article 78 proceeding against the corporation. But the question remains whether I should let the matter rest there or whether I should consider the relief available to the petitioner in pursuance of another type of special proceeding — article 75 of the CPLB, which specifically governs arbitration. The parties have not discussed the effect of this amendment of the pleadings, nor the applicability in the circumstances of article 75. But I am led to this'judicial meditation both by my own reiterated views on the subject of minimization of litigation (sere Silverman v. Rogers Imports, 4 Misc 2d 672 [1954]; Hummel v. Hummel, 62 Misc 2d 505, 507 [1970]) and also by a recent pronouncement of the Appellate Division in respect of the court administrative project of what I have designated as the precept of 11 each case — one judge ” (N. Y. L. J., June 19, 1970, p. 1,. cols. 4, 5).
Assuming, then, that, under the pleadings as amended, the instant proceeding is now one by the petitioner to vacate or modify the arbitrator’s award (CPLB 7511) or by the respondents to confirm it (CPLB 7510), several issues arise requiring determination.
As to an arbitration in pursuance of the statute, it is arguable that the following procedures of the arbitrator failed to comply with the provisions of the CPLB: Babbi Piekarsld was not sworn (CPLB 7506, subd. [a]), nor were the witnesses (CPLB 7505); notice of the hearings was not properly served (CPLB 7506, subd. [b]); the award was not in the proper form, nor was a copy of the award served in the prescribed manner (CPLB 7507). In my opinion, all of these contentions fail.
(IV)
While an arbitrator is authorized to administer oaths (CPLB 7505), there is no express statutory provision requiring witnesses to be sworn. Furthermore, as ‘ ‘ the arbitrator is not bound by the rules of evidence and may rely upon unsworn *115 hearsay, he is under no obligation to insist on the witness’ being sworn ” (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7506.05 ; see Horowitz, The Spirit of Jewish Law, § 345 [1953] as to the “ use of the best evidence obtainable ”).
In Hano v. Blanchard Co. (199 N. Y. S. 227, 230 [App. Term, 1st Dept., 1922]), the court affirmed on the opinion of the court below, wherein it was said: 11 The failure to swear witnesses is at most a mere irregularity, which does not invalidate an award. Dater v. Wellington, 1 Hill, 319. Although section 2369 of the Code of Civil Procedure requires that all arbitrators be sworn, including those elected under a common-law arbitration, there is no provision of the Code which makes the swearing of a witness a necessary part of the procedure. Code Civ. Proc. § 2370 (Civil Practice Act, § 1453, as renumbered by Laws 1921, c. 199). Furthermore, it clearly appears that the plaintiff was present at all the hearings, that he himself was not sworn, and that he made no objection to this method of taking the testimony of the witnesses. The failure to object at that time estops him from now raising the objection. Britton v. Hooper, 25 Misc. Rep. 388, 55 N. Y. Supp. 493; McGregor v. Sprott, 59 Hun, 617, 13 N. Y. Supp. 191; Bergh v. Pfeiffer, Lalor’s Supp. 110.”
I therefore hold that the swearing of witnesses in a statutory arbitration is unnecessary. Even if I err, however, and swearing is required, I hold that it is a requisite which can be waived either formally or by the conduct of the parties — and, on the facts in this .case, as in Hano (supra), there clearly was such a waiver here by conduct (see cases cited in Matter of Hellman [Wolbrom], 31 A D 2d 477, 481, supra).
(V)
Although the statute does require that the arbitrator be sworn, and that notice of hearing be served in a specified manner, the same section, in another subdivision, provides in pertinent part that “ A requirement of this section * * * is waived if the parties continue with the arbitration without objection ” (CPLR 7506, subd. [f]). This was clearly the case here, and these objections therefore cannot be raised at this time.
(VI)
The formal requisites of an award are set forth in CPLR 7507. The requirements that the award be in writing and that it be signed, are, of course, met by the July 16 document; and there is no problem in this case of an award not being made within a specified time.
*116 The original of that writing was acknowledged by Rabbi Piekarski before a notary public. This took place on March 18, 1969, over eight months after the execution thereof, and after delivery of a copy of the award to the petitioner, but prior to the commencement of this proceeding.
The requirement of acknowledgment — unlike that of filing— of the award was carried over from section 1460 of the Civil Practice Act to CPLR 7507. Whether the retention of the provision for acknowledgment was a vestige of the prior need therefor for purposes of filing (voluntary or otherwise) or was an intended aid to fix the date of the making of the award or to signify that it was final and not subject to substantive change (see 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7507.02; Thornton, McKinney’s Cons. Laws of N. Y.; Book 7B, Practice Commentary, § 7507; Second Preliminary Report of Advisory Committee on Practice and Procedure, p. 142 [1958]) the absence of an acknowledgment has been held — under the old statute — not determinative on the issue of confirmation or vacatur of an award. (Matter of Flotill Prods. [Buitoni Foods Corp.] 14 A D 2d 328, 335 [1961].) And since it is clear that continuance of the requirement of acknowledgment would certainly not result from an intention to make a change in substance so far as the new statute is concerned (Cahill-Parsons, N. Y. Civ. Prac., CPLR 7507), the result is the same when, as in this case, I am to apply the CPLR.
The agreement to arbitrate in the case at bar did not fix the time within which the award shall be made by the arbitrator (see CPLR 7507). Not so in Flotill. What was there stated by Mr. Justice (now Presiding Justice) Stevens, speaking for a unanimous Appellate Division (p. 335), is therefore a fortiori apposite here as to this point: ‘6 While the time to render an award expired December 21, 1959, the essential findings and determination had been made and signed prior to that time. Unless the consolidated or single document of January 4, 1960, is vulnerable for the reasons stated in section 1462 of the Civil Practice Act [now CPLR 7511, subd. (b)], the addition of the acknowledgments — the substance, findings and damage award not having been altered in any respect, was a mere ministerial act, which would not invalidate the award. Compare Hodgkins v. Mead (119 N. Y. 166, 171) where the court in a case at law observed: ‘In following rules of practice for the due and orderly administration of the law, care should be taken that justice is not smothered by a too slavish adherence to the mere forms and technicalities of procedure.’ There was no second *117 award, but.merely initial and final determinations, however denominated, which were in nowise contradictory or even in conflict. (Cf. Matter of Wagner [Russeks Fifth Ave.], 30 Misc 2d 127.) Together they made up the award which the statute requires. No substantial right of the parties was prejudiced thereby, and the intent of the award was effected. (Cf. Matter of Verly Bldg. Corp. [Gertner], 264 App. Div. 885.) At any rate, prior to the attack upon the award, the necessary acknowledgments had been made. (Matter of Herman, 170 Misc. 852; cf. Matter of Yeshiva Rabbi Solomon Kluger [Pievko], 188 Misc. 179.)”
In my view, if the time of the acknowledgment in Flotill had determined the time of the rendition of the award, the result in that case might well have been different. In the circumstances, therefore, I fail to see that the lateness of the acknowledgment is fatal to its validity, and I accordingly hold that the award was properly acknowledged.
(VH)
A further issue is whether a copy of the award was duly delivered to the parties.
As may be noted from an inspection of the original Hebrew award, it was signed not only by the arbitrator, but also at the close of the document by each of the three individual parties. I conclude from this that the paper-writing was delivered to them. The fact that they signed the same, and that thereafter it was redelivered to the arbitrator or his legal adviser or to one of the parties does not cancel out the fact of the prior delivery.
(VIH)
Moreover, at the petitioner’s request, Babbi Piekarski sent bim (and he received) an unsigned copy, typed in Hebrew, the original of which had been handwritten in Hebrew and signed in Hebrew by the arbitrator. It is contended that this did not constitute “ delivery ” of “a copy of the award ” to the petitioner, as required by CPLB 7507. I find no merit to this argument.
There is no provision that duplicate originals of the award must be .delivered to the parties. I hold that a true, typed copy, setting forth the terms of the award, is sufficient.
Nor is the failure to sign the copy fatal. As the statute states, II the award shall be in writing, signed and acknowledged ’ ’ (emphasis supplied) ; the copy need not be. “ The arbitrator *118 shall deliver a copy of the award to each party” (emphasis supplied); he need not deliver a ‘ ‘ signed and acknowledged ’ ’ document, which, of course, would be a duplicate original.
Also, although CPLR 7507 requires delivery “ personally or by registered or certified mail, return receipt requested” (rather than by ordinary mail as was employed here), the use of the latter method of transmission does not invalidate the delivery. As stated in a recent decision: “ In our opinion, appellant’s other contention, that the award should be vacated on the ground that prior to confirmation it was delivered by ordinary mail (of. CPLR 7507), does not present a justiciable basis for vacatur where, as here, actual delivery occurred.” (Matter of Local 964, United Brotherhood of Carpenters and Joiners of Amer. [Giresi], 29 A D 2d 768, 769 [2d Dept., 1968].)
While there was no testimony as to receipt of a copy of the award by the respondents, no issue is raised by them as to this, and the incorporation into their pleading of a photocopy of the July 16 document shows that such was in their possession.
I therefore conclude that the rabbinical decision is, from the standpoint of procedure, a lawful award in a lawful statutory arbitration proceeding. It may be invalidated (if at all) only upon the ground stated in Parts IX and X of this opinion, infra.

(IX)

There has been much testimony at trial, and a great deal of argument, both orally and in the briefs, as to whether the award was intended to terminate the petitioner’s interest in the corporation. Much is made from the language of differing translations of the original Talmudic Hebrew. According to one translation of the document, it represents only 1 ‘ the first part of the Din Torah. The Din Torah will be concluded soon.” Another translation reads: ‘ ‘ And this is the first part of the Rabbinical judgment, and with the Help of G’ this suit will soon be terminated. ” For reasons other than those urged by counsel, I have reached the conclusion that the document does not have the result for which the respondents contend.
The respondents argue that the two parts of the Din Torah are severable. Their claim, expressed in their posttrial brief, is that, at the meeting of June 10, 1968, the parties ‘ ‘ orally agreed that there would be two separate ‘ din torahs ’ or two parts to a ‘ din torah ’, the first din torah, or the first part would be a resolution of the problem of how and on what terms petitioner’s interest in the corporation could be separated from the interests of Margulies and Morgenstern, the second part would be a resolution of petitioner’s other various claims. The *119 parties agreed that they would proceed first with the first part, and after that part was resolved, they would proceed to the second part.”
This interpretation is vigorously disputed by the petitioner, and I find that the record as a whole fails to support the contention of the respondents. Rabbi Piekarski testified that, as he was soon going abroad, the Din Torah was divided into two parts for his convenience. Furthermore, considering the inelegance of the phraseology observed by all those involved in this proceeding, I find it difficult to believe that the parties agreed to as pat a formulation as “ how and on what terms petitioner’s interest in the corporation could be separated from the interests of Margulies and Morgenstern
With both translations before me, I have posed to myself the following inquiries: What claims were liquidated in the first decision of the Din Torah, and what claims were left for subsequent determination? There is no way of knowing. Was the postponed Din Torah decision to apply conditions or limitations to any of the obligations imposed on any party by the first decision? There is no way of knowing. The parties are directed in the award already made to treat all pending cases as “ null and void ”. Were the court actions then pending between the petitioner on the one hand and the individual respondents on the other, represented in part or in whole in the award, either affirmatively or by way of setoff, or are they left for later disposition? There is no way of knowing.
The result is that the arbitrator’s decision was “ so imperfectly executed * * * that a final and definite award upon the subject matter submitted was not made” (CPLR 7511, subd. [b], par. 1, cl. [iii]).
(X)
And, of course, the same reasoning is applicable in respect of the effort to enforce the document as if the parties had engaged in a common-law arbitration, as distinguished from a statutory one. I hold that, in either case, the award must be adequately plain, reasonably clear, specifically determinative, and definitively complete and final. The award being a partial one, and there being no satisfactory way for me to resolve what it does and does not decide, I conclude that, in the present proceeding, it must be treated as a nullity, and that no weight can be given to it. By consequence, I reject the claim of the respondents that the award effectuated a severance of the petitioner’s interest as stockholder, director and officer in the corporation. There is no express statement in the award to that effect. And, in my view, such a determination — with no security whatsoever *120 provided the petitioner in support of the individual respondents’ personal obligation to him in a very substantial amount to be paid during a period of many years — is, in the light of the controversies and 'bitterness between the parties, far too critical a resolution of the issues to assume or infer that this was the intent of the award or alleged agreement.
(XI)'
The respondents maintain further that the July 16 document, if not valid as an arbitrator’s award, at least constitutes a settlement of the parties,, as it is signed by the petitioner and the individual respondents.
For the reasons given in Parts IX and X, supra, however, I cannot agree with this contention. If the document is too vague and incomplete to be enforced as an arbitrator’s award, labeling it a settlement does not make the writing any the clearer. And, even on the basis of the acceptance of the oral testimony to resolve the ambiguity, that issue is determined on the facts against the respondents — both from the point of view of the burden of proof, and of the weight and credibility of the evidence.
(XII)
Having held that the writing — whether considered as an arbitrator’s award in a statutory or in a common-law arbitration or whether considered as a settlement agreement — is of no force and effect (so far, at least, as to deprive the petitioner of his admitted antecedent status as a stockholder, director, and officer of the respondent Seville), it follows that he is entitled to inspect the books thereof, and that the petition in that .respect must be granted.
"Where does that leave the parties in respect of the arbitration award, and also as to the agreement to submit to arbitration?
(XIII)
CPLR 7511 (subd. [b], par. 1, cl. [iii]) provides, as I have hereinbefore pointed out, that where an award is “ so imperfectly executed * * * that a final and definite award upon the subject matter submitted was not made ”, it is subject to vacatur or modification, ‘1 on the application of a party * * * if the court finds that the rights of that party were prejudiced ”.
Assuming that, by virtue of the amendment of the pleadings, the petitioner has applied to the court to vacate the award, and assuming further that his rights have been “ prejudiced ” by *121 the award (which does not appear to me to be the fact in the present posture of the controversy), I must now consider — insofar as the award is concerned — the Statutes of Limitation expressly incorporated in article 75 of the CPLR — having to do with rights and remedies in arbitration proceedings.
CPLR 7511 (subd. [a]) states that “ An application to vacate or modify an award may be made by a party within ninety days after its delivery to him.” CPLR 7510 provides that “ The court shall confirm an award upon application of a party made within one year after its delivery to him ”. These time periods have, on their face, long since expired.
Furthermore, there has been partial performance — albeit belatedly — by both parties as to some of the features touched upon in the award. Although I hold that the award does not deprive the petitioner of his status as a stockholder, director or. officer of Seville, I am of the view that for me, at this time, to proceed further, and to vacate or modify the award would open up a Pandora’s box containing problems of a more complicated nature than merely to decree that the petitioner’s interest in the corporation is such that he is entitled to the inspection sought.
(XIV)
The final question is that of effectuating in full the agreement of May 20, 1968, in which the parties undertook to submit to arbitration.
It will be recalled that in their signed document of May 20, 1968, the parties specifically agreed to “ submit ourselves to the decision of Rabbi Israel Yitzchok Piekarski ’ ’ and granted bim the “ privilege to take to himself two other rabbis ”, and that the parties also expressly agreed that ‘ ‘ whatever will be the decision, whether by Din Torah or by compromise similar to Din Torah, we undertake to obey such in all respects.”
I sought to have the parties agree to conclude the arbitration as expressed in the award. Both sides were willing to proceed, but there was disagreement as to who should now compose the personnel of the arbitral tribunal. The respondents would continue the arbitration only if Rabbi Piekarski were the sole or (perhaps) a participating arbitrator. This was objected to by the petitioner.
An obvious antagonism developed between arbitrator and petitioner. It was exacerbated as a result of the present litigation. Rabbi Piekarski at first refused to be a witness in the hearing before the court — probably because of deep-grained religious scruples; possibly because he was personally hurt that *122 Ms award should be subject to attack. In any case, he was subpoenaed by the petitioner, reluctantly appeared, and was called as a witness by the petitioner.
In the circumstances, a delicate balancing of interests and the needful nuance that the Judge or Judges who will be the arbitrators must both exude the spirit of lack of bias and be of utmost impartiality have led me to conclude that the matter of a directive for the resumption of the arbitration would be an improvident exercise of a judicial resolution that its continuance, in pursuance of the May 20, 1968, agreement, was within the ambit of the petitioner’s or respondents’ prayer for relief under the amendment of the pleadings in the present proceeding. Paraphrasing what was said by Mr. Justice Eager in Matter of Hellman [Wolbrom] (31 A D 2d 477, 482, supra, [1969]) the circumstances do not justify the procedure of disregarding the form of the proceeding instituted by the petitioner as originally brought or even on the basis of the amended petition. For at no time did the petitioner formally or otherwise seek to compel the respondents to proceed with or continue the arbitration. Nor did the respondents,, either by notice or application, seek to proceed with or compel arbitration (CPLR 7503).
(XV)
On the whole case, I hold that the petitioner is a stockholder, officer and director of the respondent Seville. Accordingly, his petition to inspect the books of Seville is granted. This opinion constitutes my decision in compliance with CPLR 4213 (subd. [b]). The exhibits have been delivered to the clerk to be returned to counsel upon due receipt therefor. Settle judgment.