602 P.2d 624

Roy ANDREWS, John Archambeau, Stanley Benson, Carl Cole, Ben Cruz, Larry Dillon, Chris Gurule, Jose Herrera, Thomas King, Arthur Lawson, Judge Lightfoot, Bennie Montoya, Leroy Motley, Ronnie Mowles, Leo Schuessler, Gerald Ulibarri, Robert White and George Johnson, Plaintiffs-Appellants,

v.

STEARNS–ROGER, INC., Public Service Company of New Mexico, Davy Powergas, Inc., Foster Wheeler Energy Corporation, F. Glenn Frazier, Paul B. Rose, Lorin Strange, Ron Mershon, Don Ellery, International Union of Operating Engineers, Local 953 and New Mexico Building and Construction Trades Council, Defendants-Appellees.

No. 12423.

Supreme Court of New Mexico.

Nov. 16, 1979.

Friedland, Simon, Vigil & Nelson, Morton S. Simon, Peggy Nelson, Santa Fe, Karp & Goldstein, Sander N. Karp, Denver, Colo., for plaintiffs-appellants.

Campbell, Cherpelis & Pica, George Cherpelis, John F. Nivala, Poole, Tinnin & Martin, Nicholas J. Noeding, Keleher & McLeod, John B. Tittmann, Kool, Kool, Bloomfield & Eaves, Gerald R. Bloomfield, Albuquerque, for defendants-appellees.

## OPINION

FELTER, Justice.

Plaintiffs-appellants (the employees) filed suit alleging the following: first, that the companies, defendants-appellees and their agents, violated their Master Labor Agreement by terminating employees, refusal to rehire or to arbitrate, and by blacklisting; second, that the individual agents are liable for damages for their participation in the blacklisting of employees; and third, that the employees' union failed to fairly represent the employees as was its lawful and contractual duty. The trial court granted defendants' motion to dismiss, which it treated as a motion for summary judgment as to all counts except the count alleging that the union failed to fairly represent the employees, which count was reserved for trial. Plaintiffs-appellants were employees of Stearns-Roger, Inc. (the employer). Following their termination, International Union of Operating Engineers, Local 953 (the Union), of which employees were members, filed a grievance with a Joint Administration Committee. The Committee conducted a hearing and by a vote of 5 to 1 reached a decision against the employees. That decision was the basis for the lawsuit from which this appeal is taken. We affirm in part and reverse in part.

The following questions are presented on appeal: first, whether the court erred in dismissing Counts I and II on the defense of prior binding arbitration, and second, whether the court erred in dismissing the claim of damages for blacklisting.

## POINT I

It is uncontroverted that all plaintiffs are members of Local 953 of the International Union of Operating Engineers and that the Union was their exclusive collective bargaining representative. Plaintiffs aver that: (1) at all material times a Master Labor Agreement existed between all parties; (2) this agreement contained differing grievance and arbitration procedures from those provided in the Project Agreement, which, if they were to be applied, would materially alter the rights of the parties; and (3) the defendants violated the Master Labor Agreement in the ways indicated above.

The companies urge that the Project Agreement, and not the Master Labor Agreement, is the document governing this controversy. Article 17 of the Project Agreement makes it applicable to "any contracts or subcontracts for work to be performed at the jobsite which are let by the Employer subsequent to the date of this Agreement."

The Master Labor Agreement, which employees contend was controlling, is not before this Court by way of any exhibit in evidence or through affidavit, deposition or verified pleading. Although the Project Agreement, effective April 1, 1975, and the "Wobble" (walkout) Agreement executed July 7, 1977, were not formally in evidence before the trial court, copies of both agreements were attached to briefs filed in this case, and are a part of the record on appeal.

Employees contend that there is no evidence to the effect that the Union executed the "Wobble" Agreement, that the Union was a member of the "Council" at the time of its execution, and that the Union membership had never ratified or approved the Wobble Agreement as required by the Constitution of the International Union of Operating Engineers, Article XXIV, Subdiv. 11, Section (e). That constitutional section, as amended April of 1976, provides in pertinent part as follows:

Such agreements and modifications thereof shall not be executed until they have been presented at the next membership meeting following the negotiation of the proposed agreement and have been approved by the membership affected, provided, however, that a Local Union may delegate to its Local Executive Board or to its bargaining committee authority to approve such agreements and modifications without such submission of the same to vote of its membership.

Mitigating against the employees' challenge to the procedures followed and the basis for such procedures, the New Mexico Building and Construction Trades Council and Local 953 of the International Union of Operating Engineers appear as signatories to both the Project Agreement and the "Wobble" Agreement. Further, on behalf of the employees, the Union's business agent filed the grievance with the Joint Administration Committee as provided for by the Project Agreement. The Joint Administration Committee proceeded with its hearing pursuant to the Project and "Wobble" Agreements. The decision of the Committee was based particularly on Article 16 of the "Wobble" Agreement which, insofar as pertinent, provided:

The Council and Employer agree that there will be no strike or lockout or other collective action which will interfere with, or stop, the efficient operation of construction work of the Employer. Participation by an employee or group of employees, in any act violating the above provision will be cause for discharge by the employer.

\* \* \* \* \* \*

*ANY PERSON OR GROUP OF PERSONS WHO IS FOUND TO BE IN VIOLATION OF THE ABOVE PROVISION SHALL BE TERMINATED AND SHALL NOT BE ALLOWED TO WORK ON ANY PHASE OF THE PROJECT IN ANY CAPACITY FOR THE DURATION OF THE AGREEMENTS.*

Seventeen of the plaintiffs appeared in person and one plaintiff appeared by affidavit before the Committee. No objection was voiced by any person or group of persons concerning the manner of conducting, or the authority of, the Joint Administration Committee to entertain the grievance. It was only after having "tested the waters", and after having received an adverse ruling, that plaintiffs for the first time challenged the authority of the Joint Administration Committee and the controlling effect and validity of the Project and Wobble Agreements.

Ostensibly the Joint Administration Committee acted with authority under and properly applied the Project Agreement and the Wobble Agreement. The Committee's decision was made on November 2, 1977, at the end of its hearing or shortly thereafter. In any event, it was made before December 15, 1977, when a determination to return 13 operating engineers to the "eligible for rehire" list was made pursuant to a directive in the decision. It was not until the filing of the complaint by plaintiffs on May 8, 1978, 144 days later, that the authority of the Joint Administration Committee and the applicability and validity of the Project Agreement and the Wobble Agreement were first questioned by the plaintiff employees. No claim that the Master Labor Agreement applied or was controlling was ever raised until first asserted in the lawsuit from which this appeal was taken. Neither in the trial court nor here on appeal is objection made to the substance and provisions of those two agreements. Rather, objection is made to their legality and applicability to the grievance procedure and the dispute.

■ No provision of the Master Labor Agreement or any other evidence was before the court which would allow any inference that the Master Labor Agreement controlled instead of the Project and "Wobble" Agreements. The only information in this regard that was before the court was the naked assertion of the plaintiffs that the Master Labor Agreement was controlling. However, this was coupled with the employees' participation in the proceeding before the Joint Administration Committee without objection or protest. It was within this

setting that the trial court correctly found, as a predicate for dismissal of Counts I and II, that the Project Agreement and "Wobble" Agreement were controlling.

■■ Defendants contend that the proceeding before and decision of the Joint Administration Committee was an arbitration proceeding and therefore subject to the Uniform Arbitration Act, §§ 44–7–1 to 44–7–22, N.M.S.A.1978. Assuming arguendo that this premise is correct, then plaintiffs lost their right by lapse of time to apply to the court to vacate the award. Section 44–7–12(B), N.M.S.A.1978 requires that such an application be made within ninety days after delivery of a copy of the award to the applicant. Moreover, having participated without protest in the proceedings before the Joint Administration Committee, plaintiff employees are bound by the award made. See *Design Engineering Corp. v. Jenkins*, 74 N.M. 603, 396 P.2d 590 (1964); *Robinson v. Navajo Freight Lines, Inc.*, 70 N.M. 215, 372 P.2d 801 (1962); *Neece v. Kantu*, 84 N.M. 700, 507 P.2d 447 (Ct.App. 1973), *cert. denied*, 84 N.M. 696, 507 P.2d 443 (1973); *Chacon v. Mountain States Mutual Casualty Co.*, 82 N.M. 602, 485 P.2d 358 (Ct.App.1971).

In *Design Engineering*, the rule was succinctly stated by this Court, in quoting with approval from *Dugan v. Phillips*, 77 Cal. App. 268, 246 P. 566 (1926), as follows:

" * * *. 'He appeared before the committee and presented his side of the controversy. Had the award been in his favor he doubtless would have insisted that the plaintiff was bound by it. A party cannot be allowed thus to speculate upon the action of the arbitrators and then refuse to be bound by an adverse award. "Participation in the arbitration proceedings is of itself evidence of the party's prior agreement to submit." ' "

74 N.M. at 605, 396 P.2d at 591.

It is next contended by the employees that even if the Project Agreement were controlling and the proceedings before the Joint Administration Committee were authorized, lawful and proper, still no final arbitration decision was made under the

law. The Project Agreement provided, inter alia:

If the Joint Administrative Committee cannot reach a mutually satisfactory settlement within five (5) working days following referral of the grievance it shall select an impartial arbitrator within five (5) working days to serve with the Committee as an arbitration panel.

\* \* \* \* \* \*

The decision of the majority of the arbitration panel shall be binding upon all parties.

■ The Employees contend that no "mutually satisfactory settlement" was reached, inasmuch as the decision was by a 5 to 1 vote and therefore not unanimous. Additionally, it is argued that the proceeding before the Committee was not an "arbitration" proceeding and the quoted provision in the Project Agreement was not followed. Neither argument has merit. Where parties voluntarily submit a grievance to a joint management union committee for decision, the decision of that committee is subject to and governed by the same standards as an arbitrator's award, and is to be accorded the same finality. See *Truck Drivers Union v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 89, 9 L.Ed.2d 918 (1963); *Intern. Broth. of Team., Etc. v. W. Pa. Mo. Car.*, 574 F.2d 783 (3d Cir. 1978); *Intern. Broth. of Elect. Wkrs., Etc. v. Prof. Hole*, 574 F.2d 497 (10th Cir. 1978); *Walters v. Roadway Express, Inc.*, 557 F.2d 521 (5th Cir. 1977).

■ The Joint Administration Committee was composed of six members, three designated by the Employer and three designated by the New Mexico Building and Construction Trades Council, AFL–CIO. With such a partisan composition of the joint committee, it is not unreasonable to surmise that the provisions in the Project Agreement relating to selection of "an impartial arbitrator" were calculated for use in cases of a tie vote within the Committee. Further, in view of the partisan composition of the committee, it would be reasonable to surmise that a unanimous decision would be

a predictable result on a frequent basis. Viewed in this context we cannot agree that the language "mutually satisfactory settlement" was intended to mean the unanimous decision of the committee. It is more rational to assume that it was intended to mean a majority decision. Thus, the 5 to 1 decision by the Joint Administration Committee finalized settlement of the grievance. There was no necessity or basis for selection of "an impartial arbitrator" for further proceedings.

■ Employees cite common law authority for the proposition that an arbitration award must be unanimous. The Uniform Arbitration Act is in effect in New Mexico and it supersedes conflicting common law authority. Section 44–7–1 makes the Uniform Arbitration Act applicable to "arbitration agreements between employers and employees or between their respective representatives unless otherwise provided in the agreement." Neither the Project Agreement nor the "Wobble" Agreement provides that the Uniform Arbitration Act shall not apply, nor is its application repugnant to any provision within either of those agreements. Section 44–7–4 provides that:

> The powers of the arbitrators may be exercised by a majority unless otherwise provided by the agreement or by the Uniform Arbitration Act [44–7–1 to 44–7–22 NMSA 1978].

The decision of the Joint Administration Committee was lawful, and was final and binding. However, its decision is still subject to the question raised in Count III of plaintiff's complaint. That question, whether the Union fairly represented the employees in the grievance proceedings according to the duty imposed upon it by law, was reserved by the trial court for hearing and decision.

POINT II

It is undisputed that the "blacklist" referred to in plaintiff's complaint is the same as the "ineligible for rehire" list.

The blacklisting statute of New Mexico, from which employees assert a derivative tort action, reads as follows:

> Blacklisting consists of an employer or his agent preventing or attempting to prevent a former employee from obtaining other employment.

Section 30–13–3, N.M.S.A.1978.

In their Second Amended Complaint, employees have alleged that certain defendants did "prepare and circulate a blacklist of the plaintiffs, requesting that building contractors operating *in San Juan County, New Mexico, and in other locations*, as well as each other not employ the plaintiffs." (emphasis added.) Defendants deny those allegations and assert affirmatively that "any comments to third persons concerning Plaintiffs were true, privileged, justified and not made to harm Plaintiffs."

■ The only defendant that could be classified as an employer as contemplated by Section 30–13–3 is Stearns-Roger, Inc., because plaintiffs, after termination, were "former employees" only of Stearns-Roger, Inc. The trial court properly dismissed Count II as against all defendants, except for a possible cause of action against Stearns-Roger, Inc. In dismissing Count II against Stearns-Roger, Inc., the court treated it as a summary judgment. The trial court, insofar as the record on appeal reflects, was without affidavits, depositions, or factual stipulation reflecting upon the alleged blacklisting activity. In essence the dismissal, which was treated as a summary judgment, was made upon the basis of the pleadings. As to the defendant, Stearns-Roger, Inc., we believe that the pleadings presented a genuine issue of material fact as to whether that employer had committed a tort against the plaintiffs by blacklisting them. Where a genuine issue exists as to a material fact, summary judgment may not be granted. *Runyan v. Jaramillo*, 90 N.M. 629, 567 P.2d 478 (1977); *Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977); *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972); *Southern Pacific Co. v. Timberlake*, 81 N.M. 250, 466 P.2d 96 (1970). Plaintiffs' claim for damages for blacklisting was not before the Joint Ad-

ministration Committee as a part of the grievance complaint which that committee decided. The trial court erred in dismissing Count II as against the defendant, Stearns-Roger, Inc.

The decision dismissing Counts I and II is affirmed except for dismissal of Count II against the defendant, Stearns-Roger, Inc. The dismissal of Count II against the defendant, Stearns-Roger, Inc. is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

PAYNE, J., and JOE H. GALVAN, District Judge, concur.