637 P.2d 558

**CHACO ENERGY COMPANY,**
Applicant-Appellant,

v.

**THERCOL ENERGY CO.,**
Respondent-Appellee.

**No. 13489.**

Supreme Court of New Mexico.

Dec.. 1, 1981.

Rodey, Dickason, Sloan, Akin & Robb, Rex D. Throckmorton, Mark K. Adams, Diane Fisher, Albuquerque, for applicant-appellant.

Keleher & McLeod, Russell Moore, William B. Keleher, Albuquerque, Kohn, Shands, Elbert, Gianoulakis & Giljum, Alan C. Kohn, Charles S. Elbert, St. Louis, Mo., Turner, Hitchins, McInerney, Webb & Hartnett, William G. Webb, Dallas, Tex., for respondent-appellee.

## OPINION

FRANK H. ALLEN, Jr., District Judge.

An application was filed in the Bernalillo County District Court by the appellant, Chaco Energy Company (Chaco), to confirm an arbitration decision and to vacate an amendment to the decision. By cross-application the appellee, Thercol Energy Company (Thercol), sought to confirm both the arbitration decision and its amendment. The trial court entered a judgment confirming the decision and the amendment. Chaco appeals. We reverse.

Chaco and Thercol entered into a Joint Development and Operating Agreement dated January 26, 1977, wherein Chaco was to receive a one-third interest in certain state and federal coal leases covering property in McKinley County, New Mexico, for mining the coal properties. The agreement specified that Chaco would commence mining the coal properties by January 1, 1980, absent of a *force majeure* event or events. The agreement also provided that Chaco must begin making minimum distribution

payments of $200,000 per month to Thercol starting January 1, 1980, unless Chaco was prevented from taking the coal by a *force majeure* event or events.

On October 16, 1979, and again on December 31, 1979, Chaco gave notice to Thercol that it would not begin mining on January 1, 1980, nor make the minimum distribution payments to Thercol because of the following five *force majeure* events:

1. Lease Assignment. The assignment of one-third of Thercol's interest in the coal properties to' Chaco had not been approved by the United States Bureau of Land Management. Chaco had paid $31,000,000 for this ownership interest and Chaco claimed that it could not mine coal when it was not an approved owner of the property.

2. Water Rights. Chaco lacked sufficient water rights for a mining operation.

3. Permitting. The United States Department of Interior and the State of New Mexico had not issued the required surface mining permit to Chaco.

4. Surface Rights. The Navajo Tribe owned portions of the surface over the coal and had not consented to Chaco's proposed surface mining operations.

5. Transportation. The only feasible method of transporting coal from the proposed mine was by railroad and the Santa Fe Railroad Company had not completed its line to the mine site.

Thercol denied that the claimed events satisfied the *force majeure* section of the agreement and demanded arbitration. Each party appointed an arbitrator and a neutral arbitrator was appointed by the United States District Court for the District of New Mexico. The arbitration clause of the agreement provided that the written decision of the arbitrators was to be delivered to the parties thirty days after selection of the last arbitrator, this date being June 12, 1980. The written decision provided that Permitting and Surface Rights were events which satisfies the *force majeure* clause, and Lease Agreement and Water Rights did not. The final event, Transportation, was not decided since it was prema-ture. On June 10, the arbitrators telephoned the respective counsel and orally reported the decision. The arbitrators, after signing the decision, dispersed. Copies of the written decision were mailed to counsel for the parties by express mail on the afternoon of June 10, 1980. Chaco's lawyers received a signed copy of the June 10 decision on June 11. Thercol's lawyers received an unsigned copy on June 11, and a signed copy on June 12.

The day after the June 10 decision, the neutral arbitrator felt he had erred with respect to a portion of his earlier decision, and placed a conference call to the arbitrators to discuss the matter. Without reopening the proceedings for additional evidence or argument, the neutral arbitrator and Thercol's arbitrator prepared an amended decision which held that the events of *force majeure* for Permitting and Surface Rights would expire March 1, 1981. Chaco's arbitrator refused to participate in the decision. Copies of the amended decision, dated June 11, 1980, were hand-delivered to the parties on June 12, 1980.

After a hearing on the merits the trial court confirmed both the June 10 decision and the June 11 amended decision. The district court concluded that the June 10 decision was incomplete because the arbitrators failed to decide an issue specifically submitted to them, to-wit: the duration of the *force majeure* events of Permitting and Surface Rights. Since the arbitrators had not completed their task on June 10, the June 10 decision did not render the arbitrators *functus officio* when they made their June 11 amended decision. The district court further concluded that since the arbitrators had until June 12 to complete their work, the arbitrators retained authority to change the decision until that date. And, finally, the district court concluded · that even if the June 10 decision was complete, it could be amended at any time before delivery because delivery is a necessary prerequisite to making a final award. Such delivery did not occur until June 12 when signed copies of the June 10 decision and the June 11 amended decision were deliv-

ered to both parties pursuant to Section 44–7–8(A), N.M.S.A.1978.

The Joint Development and Operating Agreement entered into by the parties provides that arbitration proceedings shall be carried out in accordance with the provisions of the New Mexico Uniform Arbitration Act. In New Mexico, arbitration proceedings and awards are governed both by common law and by the New Mexico Uniform Arbitration Act, N.M.S.A. §§ 44–7–1 through 44–7–22, N.M.S.A.1978. *Robinson v. Navajo Freight Lines, Inc.*, 70 N.M. 215, 372 P.2d 801 (1962). The provisions of the Act govern where the Act conflicts with common law. *Andrews v. Stearns-Roger, Inc.*, 93 N.M. 527, 602 P.2d 624 (1979).

Although the trial court found that the June 10 decision was incomplete because the arbitrators failed to decide an issue submitted to them, the June 10 decision was considered by the arbitrators as a final arbitration decision. The neutral arbitrator testified that the June 10 decision was not a draft or temporary decision, it was complete in all aspects, and no further deliberations were to take place.

The June 11 decision is referred to as an "amended" decision and the last sentence provides "[e]xcept as herein *modified* my decision of June 10, 1980, remains in effect." (emphasis added.) The June 10 decision addressed the questions of setting a termination date for the *force majeure* events when the neutral arbitrator recited: "[N]ot having any control over the Federal Government, I feel fixing a definite date cannot be justified." The June 11 decision changed this finding by reciting:

> In my decision of June 10, 1980, I found force majeure events to exist under *permitting* and *surface rights* but declined to fix a date for performance. In that regard, I feel that I was in error and therefore amend my decision so as to extend the time for performance under Section 26 of the Agreement to March 1, 1981.

Furthermore, the June 10 decision specified the outside date for expiration of the *force majeure* events to be January 1, 1984; the June 11 decision reduced this period to March 1, 1981. The June 10 decision was a final award, the June 11 amended decision was a change of that award.

■ Any change of the award by the arbitrators must be for the purpose of (1) correcting an apparent miscalculation or mistake in a description referred to in the award; or (2) correcting a matter of form, as opposed to substance. § 44–7–13(A). An amended award for purposes other than the aforementioned is void and of no effect. *Banks v. Milwaukee Insurance Company*, 247 Cal.App.2d 34, 55 Cal.Rptr. 139 (1966); *Wolff & Munier, Inc. v. Diesel Construction Co.*, 41 A.D.2d 618, 340 N.Y.S.2d 455 (App. Div.1973). The amended decision was not for any of the aforementioned purposes set and is therefore void.

■ Thercol argues that Section 44–7–9 is not applicable until the arbitrators are *functus officio*, and they are not *functus officio* until they have rendered a complete decision on all matters submitted to them. Thercol misinterprets the application of *functus officio* as applied to arbitration proceedings. It is a general rule in common law arbitration that when arbitrators have executed a binding award and declared their decision to be final, they are *functus officio* and have no power or authority to proceed further. *Bayne v. Morris*, 68 U.S. (1 Wall.) 97, 17 L.Ed. 495 (1863); *La Vale Plaza, Inc. v. R. S. Noonan, Inc.*, 378 F.2d 569 (3rd Cir. 1967); *Mercury Oil Refining Co. v. Oil Workers Int. Union, CIO*, 187 F.2d 980 (10th Cir. 1951); *Hartley v. Henderson*, 189 Pa. 277, 42 A. 198 (1899).

Thercol also contends that at the time of the June 11 amended decision, the arbitrators had not exhausted their powers and were not *functus officio*. Thercol reasons that even if a final award was rendered on June 10, the arbitrator retained authority to change the decision so long as the change occurred before June 12.

The arbitration provisions of the Joint Development and Operating Agreement provided that the arbitrators shall "make their decision and written report to the parties not later than thirty (30) days after

the selection of the last of their number." The thirty-day period ended June 12. This thirty-day limit established a period beyond which the arbitrators could not act; it did not prevent the arbitrators from deciding and disposing of the matter before the expiration of the thirty-day period. It did not extend their authority once they made a decision which was intended to be final and binding on the parties. *See Herman Andrae Electrical Co. v. Courteen*, 176 Wis. 92, 186 N.W. 212 (1922).

 Section 44–7–8(A) provides that:

"[t]he arbitrators shall deliver a copy to each party personally or by registered mail or certified mail, return receipt requested, or as provided in the agreement."

The delivery requirements of Section 44–7–8(A) were not followed in that the June 10 decision was mailed to counsel for the parties by express mail. Chaco's lawyer received a signed copy on June 11, one of Thercol's lawyers received an unsigned copy on June 11, another of Thercol's lawyers received a signed copy on June 12.

The June 10 decision which was intended to be final by the arbitrators became an award when it was signed and reported. Section 44–7–8(A) requires that a copy be delivered, not that a signed and acknowledged document, which would be a duplicate original, be delivered. There is no requirement that the copy be signed. *See Kozlowski v. Seville Syndicate, Inc.*, 64 Misc.2d 109, 314 N.Y.S.2d 439 (1970).

Although delivery was not accomplished by the method required by statute, the important consideration is whether delivery actually occurred within the required time. *See Kozlowski v. Seville Syndicate, Inc., supra; Local 964, United Bro. of Carpenters & Join. v. Giresi*, 29 A.D.2d 768, 287 N.Y.S.2d 854 (1968); *Stroh v. State Accident Insurance Fund*, 261 Or. 117, 492 P.2d 472 (1972). The method would become important if the delivery was not accomplished within the required time, although the statutory method of posting was complied with. Delivery of a copy to both parties was accomplished on June 11, 1981.

The June 10 decision was a final award and delivered within the required time. The June 11 amended decision was an alteration of the June 10 decision which is not authorized by Section 44–7–9. The judgment of the trial court is hereby reversed. The cause is remanded with instructions to enter judgment confirming the June 10 decision and vacating the June 11 amendment.

IT IS SO ORDERED.

EASLEY, C. J., and SOSA, Senior Justice, concur.