697 P.2d 954

**Cipriano SEGURA and Administrator of Veterans' Affairs, Plaintiffs-Appellants,**

v.

**KAISER STEEL CORPORATION, Defendant-Appellee.**

No. 7218.

Court of Appeals of New Mexico.

April 26, 1984.

Certiorari Quashed March 6, 1985.

Anthony G. Lopez, Lopez & Chavez, P.C., Taos, for plaintiffs-appellants.

Paul A. Kastler, Kastler Law Office Ltd., Raton, for defendant-appellee.

## OPINION

ALARID, Judge.

On April 23, 1979, Cipriano Segura (Segura), a miner employed by Kaiser Steel Corporation (Kaiser) as a "utility man,"[1] suffered a heart attack while performing his duties. Segura's job on that day consisted of unloading trucks filled with coal. He directed the truck drivers to stop in appropriate locations and signaled them to open the trucks' belly doors to release their loads into "dumps."[2] The web or "grizzly" covering the hole into which the loads are released sifts the chunks of coal so that the coal may pass evenly below, onto a conveyor belt. The coal chunks were unusually large on April 23, so Segura had to quickly break them with a fourteen-foot steel bar and a twenty-pound sledgehammer to allow their free passage through the grizzly. Several trucks were in line, waiting to be unloaded. Segura had trouble breaking one particularly large chunk of coal. One of Segura's supervisors strapped a rope to Segura and lowered him into the hole so that he might attach a chain around the chunk and allow a loader to pull the chunk from the mouth of the grizzly.

Segura was sent to the company office the morning of April 23 after complaining of "chest pains," and then he was taken to the Northern Colfax County Hospital where he was placed in intensive care. Segura had suffered a myocardial infarction, or a heart attack. After about ten days of hospitalization, he was released. Subsequently, Segura sought further care at the Veterans' Administration Hospital (Veterans'), and later underwent bypass surgery at Veterans' in late July.

Segura received weekly sickness and accident benefits under his union's Sickness and Accident Plan through October 16, 1979. Segura did not return to work until October 13, 1981. Soon after his return to work, Segura was again physically incapacitated and was forced to stop working altogether. He did not file a workman's compensation action for the April 23 heart attack until August 19, 1980—one year and four months after Segura's on-the-job at-

---

1. The duties of a "utility man" in Kaiser's mining operations consist of cutting down trees, planting, blowing straw, working in the silos, unloading trucks, etc.—essentially the work that nobody else by job description is required to do.

2. "Dumps" are holes in the ground covered by a web or mesh of heavy gauge iron, three to four feet square, which sift the chunks of coal.

tack. Veterans' who was joined as a party plaintiff in the first amended complaint sought reimbursement for medical services furnished to plaintiff incident to his disability.

The trial court concluded that "Segura sustained an accidental injury arising out of, and in the course of, his employment, with Kaiser Steel Corporation. Such accident was reasonably incident to his employment and the disability from which plaintiff Segura suffers is a natural and direct result of such accident." Segura suffered a total disability commencing April 23, 1979.

The court nevertheless denied Segura's claim against his employer, Kaiser, because the court determined that Segura ceased being a Kaiser employee on the day of the accident, so as to invoke the Workmen's Compensation Act one-year period of limitations set forth in NMSA 1978, Section 52–1–31; for the same reason, the court disallowed Veterans' reimbursement claim against Kaiser for the medical services provided to Segura. *See Pena v. New Mexico Highway Dept.*, 100 N.M. 408, 671 P.2d 656 (Ct.App.1983).

Segura's claim for medical and related expenses (other than those claimed by Veterans') was allowed under NMSA 1978, Section 52–1–49; and he was allowed vocational rehabilitation services under NMSA 1978, Section 52–1–50, because these Sections do not contain the one-year limitations period.

Segura and Veterans' appeal; Kaiser cross-appeals.

**Segura and Veterans' Appeal**

Segura first argues that he remained employed by Kaiser at least through August 19, 1979, so as to toll the period of limitations under Section 52–1–31(A). Kaiser answers that the trial court correctly concluded Segura's employment ended on April 23, 1979, the day of Segura's heart attack. Whether the workman remained employed after the accident is crucial to this appeal because the usual one-year period of limitations is tolled during the time he "remains employed by the employer by whom he was employed at the time of such accidental injury, not to exceed a period of one year." Section 52–1–31(A); *see De La Torre v. Kennecott Copper Corp.*, 89 N.M. 683, 556 P.2d 839 (Ct.App.1976). We must decide whether the statutory phrase "remains employed" encompasses Segura. We hold that it does.

■ For the tolling provision to apply, there must have been an employer-employee relationship which continued after the accident. *De La Torre.* One need not be actually working and receiving compensation for the work to remain employed within the meaning of the statute. *Id.*

The existence of an employer and employee relationship depends upon a contract of employment and cannot exist without mutual assent, express or implied. *Jelso v. World Balloon Corp.*, 97 N.M. 164, 637 P.2d 846 (Ct.App.1981). In this case the material facts are undisputed, so whether Segura remained employed is a question of law. *Id.* It is unchallenged that Segura had been an employee of Kaiser for many years, and that he remained employed at least until the April 23, 1979 incident.

■ The parties' employment relationship was governed by the National Bituminous Coal Wage Agreement of 1978. (Defendant's Exhibit H.) This comprehensive agreement covers such issues as health and safety, wages and hours, helpers on face equipment in underground mines, shifts and shift differentials, starting time, allowances, cost of living wage increases, sickness and accident benefits, holidays, regular vacation, graduated vacation, training, seniority, and other matters, including discharge. As in *Conwell v. City of Albuquerque*, 97 N.M. 136, 637 P.2d 567 (1981), *Local 2238, v. New Mexico State Highway Department*, 93 N.M. 195, 598 P.2d 1155 (1979) and *Andrews v. Stearns-Roger, Inc.*, 93 N.M. 527, 602 P.2d 624 (1979), we look to the union contract in considering questions related to employment which are encompassed within the Agreement's provisions. *See also New Mexico District Council of Carpenters, AFL–CIO v. Mayhew Co.*, 664 F.2d 215 (10th Cir.1981).

Our function is to interpret and enforce the contract as made by the parties. *Schaefer v. Hinkle,* 93 N.M. 129, 597 P.2d 314 (1979); *see Sierra Blanca Sales Co. v. Newco Industries, Inc.,* 84 N.M. 524, 505 P.2d 867 (Ct.App.1972). The contract will be considered and construed as a whole, with meaning and significance given to each part in its proper context, so as to ascertain the parties' intentions. If there is an ambiguity in the contract, intent will be ascertained from the language used, the parties' conduct, and the surrounding circumstances. *Sierra Blanca Sales Co.*

We consider Segura's employment status subsequent to his April 23, 1979 heart attack in light of the foregoing principles. Initially, Kaiser admitted that Segura was its employee on April 23, 1979. A status once shown is presumed to continue until evidence is shown to the contrary. *McClendon v. Dean,* 45 N.M. 496, 117 P.2d 250 (1941); NMSA 1978, Evid.R. 301 (Repl. Pamp.1983). The evidence does not indicate the presumption should be rebutted. The contract specifically provides that sickness and accident benefits shall not be payable if the employee's employment has been terminated. Segura continued to receive sickness and accident benefits after the injury. The contract's terms at least imply Segura was employed while he was receiving those benefits.

Furthermore, the contract does not explicitly determine when employment comes to an end. But we think that an employment relationship under the union contract may be terminated by Segura's quitting, discharge, retirement, refusal to return to work following layoff, or a final determination of permanent and total disability under federal and/or state laws which provide for compensation therefor. *See* National Bituminous Coal Wage Agreement of 1978 (effective March 27, 1978), Articles XI Section (b) (Sickness and Accident Benefits Eligibility), XIV Section (c) (Graduated Vacation-Definition of Continuous Employment). We reach this conclusion by reference to the cited articles of the Agreement, the parties' conduct, and the surrounding circumstances. *Schaefer; Sierra Blanca Sales.*

Kaiser did not allege or present evidence suggesting that Segura intended to quit his employment on April 23, 1979 or thereafter. Segura denied having intended such a result. Similarly, no assertion or evidence suggested that Segura was "discharged" from employment by Kaiser on or after April 23. *See* Article XXIV(a), (b) of the Agreement. The record evidences no "just cause" for terminating Segura's employment on April 23. Even assuming such cause exists, nothing in the record suggests that Kaiser followed proper procedures in discharging Segura. Consequently, Kaiser did not meet its burden of showing grounds for discharge or actual discharge.

Furthermore, no allegation was made or evidence presented to show Segura retired, or that he refused to return to work following a layoff. There was a question whether Segura had been finally determined to be permanently and totally disabled. We interpret "final determination" as synonymous with final judgment or order. *See Aetna Casualty & Surety Co. v. Miles,* 80 N.M. 237, 453 P.2d 757 (1969). The trial court did not reach its final and appealable judgment as to Segura's disability status until April 26, 1983. That decision did not consider whether Segura's disability was "permanent." Even if Segura had been found to be permanently and totally disabled, the trial court could not retroactively apply its finding of "total disability" to the date of Segura's April 23, 1979 heart attack so as to deprive the workman of the two-year period of limitations provided to those who, under a contract of employment, remain employed by the employer by whom they were employed at the time of the accidental injury. Section 52-1-31(A). We conclude the trial judge erred in concluding Segura's employment terminated on the day of his heart attack.

We agree with appellants that Segura remained employed at least through August 19, 1979. *De La Torre.* We hold that the phrase "remains employed" as used in

Section 52–1–31(A) encompasses Segura. Under his employment contract, his status as an employee continued so as to toll the statute. Segura had at least until August 19, 1980 to file this action. He met this deadline and may proceed with his claim.

■ Because Segura may proceed with his claim to full compensation benefits, we hold that Veterans' is entitled to reimbursement pursuant to its power of attorney agreement with Segura. In this agreement, Segura assigned to Veterans' all his rights and interests in benefits under the Workmen's Compensation Act to the extent of costs Veterans' incurred in treating Segura's work-related heart attack. *See* 38 U.S.C. §§ 610, 621 (1976 & Supp. V 1981); 38 U.S.C. § 629 (Supp. V 1981); 38 C.F.R. §§ 17.47(d), 17.48(d)(1) (1982); *Texas Employers' Insurance Association v. United States,* 558 F.2d 766 (5th Cir.1977); *United States v. Kirkland,* 405 F.Supp. 1024 (E.D. Tenn.1975). Reimbursement should be limited to those costs which were related to Segura's heart attack.

■ Appellants next argue that the trial court erred in failing to allow an evidentiary proceeding on the issue of reasonable attorney's fees. They also challenge the $1,600 attorney's fee award as miserly. Although we agree that the award seems rather small, we need not consider this issue. The workman is more successful on this appeal than he was at trial. In light of Segura's more complete success on appeal, the trial court on remand must afford appellants an opportunity to present evidence upon which the court may base a reasonable attorney's fee award. The court must consider each of the applicable eleven *Fryar* factors in arriving at the size of the award. *Fryar v. Johnsen,* 93 N.M. 485, 601 P.2d 718 (1979); *Johnsen v. Fryar,* 96 N.M. 323, 630 P.2d 275 (Ct.App.1980). The record must contain substantial evidence upon which the court can support findings of fact adopted on the award. *Jennings v. Gabaldon,* 97 N.M. 416, 640 P.2d 522 (Ct. App.1982).

**Kaiser Cross-Appeal**

■ Kaiser on cross-appeal argues that if we permit Segura to proceed with his compensation claim, we should reverse the trial court's finding that Segura's heart attack was an accidental injury under the Act. New Mexico courts have long recognized that a heart attack caused by employment is an accidental injury within the Act. *Sanchez v. Board of County Commissioners,* 63 N.M. 85, 313 P.2d 1055 (1957); *Hathaway v. New Mexico State Police,* 57 N.M. 747, 263 P.2d 690 (1953); *Webb v. New Mexico Pub. Co.,* 47 N.M. 279, 141 P.2d 333 (1943); *Christensen v. Dysart,* 42 N.M. 107, 76 P.2d 1 (1938). Testimony was unchallenged that Segura sustained the attack while working at Kaiser's mining site. Therefore, Segura received a compensable injury if the attack was caused by his employment.

■ Kaiser argues that no substantial evidence exists showing a causal connection between Segura's employment and the April 23 heart attack. We disagree. Dr. John Leach, a cardiologist who was responsible for Segura's treatment, testified that the patient's medical history indicated he sustained an episode of severe chest pain, nausea, and sweating while at work on the morning of April 23, and he suffered a myocardial infarction (heart attack). Dr. Leach's conclusion was based upon his expert review of Segura's medical records and charts, which were introduced as evidence. Given the nature of physical labor Segura was performing on the morning of April 23—i.e., rapid breaking of coal chunks with a fourteen-foot steel bar and a twenty-pound sledgehammer and being strapped with a rope and lowered into the grizzly to tie a chain around a particularly large chunk of coal—Dr. Leach testified that the heart attack was to a medical probability causally related to the work Segura was performing. This testimony was legally sufficient to establish the connection between the work performed and the injury. *Alspaugh v. Mountain States Mutual Casualty Co.,* 66 N.M. 126, 343 P.2d 697 (1959). Because a reasonable per-

540

son might accept Dr. Leach's testimony as sufficient to support the conclusion, *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 428 P.2d 625 (1967), we conclude that substantial evidence supports the trial court's determination on causation. *Moorhead v. Gray Ranch Co.*, 90 N.M. 220, 561 P.2d 493 (Ct.App.), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977).

Kaiser finally argues that the trial court erred in awarding future medical expenses and vocational rehabilitation costs. We find no error on these issues. Having found that Segura is not barred by Section 52–1–31(A) from proceeding with his claim to compensation benefits, he certainly may recover future medical expenses and vocational rehabilitation costs.

This cause is reversed and remanded to the trial court for proceedings consistent with this opinion.

IT IS SO ORDERED.

DONNELLY, C.J., and MINZNER, J., concur.